IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |

DECLARATION AND EXPERT REPORT OF MICHAEL A. KRAMER

I, Michael A. Kramer, hereby declare and state:

1

6. The proposed labor cost savings of approximately $725 million are integral to attaining the cash flow and credit metrics that certain lenders have suggested they are seeking in order to provide exit financing. The savings directly impact United's credit metrics and provide the Company with recurring, annual cash flow. Furthermore, the labor savings provide necessary, immediate liquidity as United enters its historically weakest quarter. However, with respect to the Debtor's position that all Pension Plans must be terminated to achieve this result, I disagree with the §1113 motion and Todd Snyder's supporting declaration (the "Snyder Declaration").

7. United's termination of the Pension Plans would allow the Company to improve its liquidity primarily in the next two to three years by avoiding funding requirements during a period of relatively limited cash flow compared to later years in its forecast.[2] However, United can realize adequate liquidity even under its current business plan by (i) terminating some but not all Pension Plans, (ii) freezing those plans that are retained, (iii) seeking minimum funding contribution waivers to defer large upcoming funding requirements so that the cash burden is better aligned with the Company's cash flow generation, or (iv) some combination thereof.

8. Under the Gershwin 5.0F projections, the Company has sufficient liquidity and free cash flow to support at least one of the Pension Plans currently in place, namely the FA plan, even without application for any waivers. Furthermore, if one considers United's ability to freeze the Pension Plans and obtain near-term waivers of upcoming payments, additional plans are also supportable. Neither the Snyder Declaration, nor any other declarations or analysis put forth by United, to the best of my knowledge, considers the possibility of retaining some, but not

---

Defined Benefit Pension Plan ("FA"), United Airlines Management, Administrative and Public Contract Defined Benefit Pension Plan ("MA&PC").
[2] However, termination of the pensions provides no immediate liquidity benefit. The Company has made no funding payments since April 15, 2004 and does not intend to make any payments prior to United's emergence from bankruptcy.

all four of the Pension Plans, or explores the potential use of freezes and waivers to ameliorate the near-term liquidity issues of the Company.

9.  Implementing a freeze of the Pension Plans will immediately stop future benefits from accruing under the Pension Plans. The implementation of three consecutive waivers, beginning with the 2005 plan year for the Pilots plan and the 2004 plan year for all other plans, would smooth and defer payments until years when United is projected to have fully instituted its cost saving measures and restored cash flow stability.[3] For illustrative purposes, the scenarios in the following analysis assume that any plans that are retained are frozen and replaced with defined contribution plans equal to the replacement plans assumed by United in Gershwin 5.0F. Greenhill has assumed that all Pension Plans United does not retain are terminated and replaced with defined contribution plans as modeled by United. The funding requirements and expense figures underlying this analysis are those provided by United through the Debtor's financial advisor, Rothschild, and, to the best of my knowledge, produced by United's actuarial consultant, Towers Perrin. I have been informed by the PBGC's Supervising Chief Negotiating Actuary that she has reviewed the funding assumptions and believes that they are a correct projection of UAL's expected minimum funding requirements based on the stated assumptions and methods.

10. For illustrative purposes, Greenhill has analyzed six scenarios, as listed below, to consider the retention of various combinations of the Pension Plans. These scenarios do not represent a recommendation, but instead are intended to be illustrative.

   a. Retain FA, MA&PC and UG plans with freezes and waivers

---

[3] The maximum number of short-term waivers permitted by the IRS in a fifteen-year period is three. Preliminary discussions between the PBGC and the IRS suggest that the IRS would be willing to consider requests for multiple waivers and, therefore, that such scenarios are reasonable to consider. While the Debtors previously made a waiver request that was subsequently withdrawn, the Debtors do not appear to have even approached the IRS with such a request in the days and weeks before it filed its §1113 motion.

5

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of December, 2004.

*Michael A. Kramer*
Michael A. Kramer
Managing Director
Greenhill & Company