# UNITED

# 2003 - 2009 FLIGHT ATTENDANT AGREEMENT

## ASSOCIATION OF FLIGHT ATTENDANTS



**2003-2009**
**RESTRUCTURING AGREEMENT**

between

**UNITED AIRLINES, INC.**
and
**THE FLIGHT ATTENDANTS**

in the service of
**UNITED AIRLINES, INC.**

as represented by

**THE ASSOCIATION OF FLIGHT ATTENDANTS**

THIS AGREEMENT is made and entered into in accordance with the provisions of Title II of the Railway Labor Act, as amended, by and between UNITED AIR LINES, INC. (hereinafter referred to as the "Company") and the FLIGHT ATTENDANTS in the service of UNITED AIR LINES, INC., as represented by the ASSOCIATION OF FLIGHT ATTENDANTS (hereinafter referred to as the "Union").

WITNESSETH

It is hereby mutually agreed:

**TABLE OF CONTENTS**

| Section | | Page |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Definitions | 2 |
| 3 | Union Activity | 8 |
| 4 | General | 16 |
| 5 | Compensation | 25 |
| 6 | Expenses, Transportation and Lodging | 36 |
| 7 | Hours of Service and Contractual Legalities | 41 |
| 8 | Minimum Pay and Credit | 51 |
| 9 | Flight Assignments and Scheduling Procedures | 55 |
| 10 | Reserve Scheduling Procedures | 80 |
| 11 | Deadheading | 93 |
| 12 | International Operation | 96 |
| 13 | Military Airlift Command | 123 |
| 14 | Temporary Duty Assignment | 128 |
| 15 | Training and Meetings | 130 |
| 16 | Uniforms | 133 |
| 17 | Seniority | 137 |
| 18 | Vacations | 141 |
| 19 | Sick Leave | 148 |
| 20 | Physical Examinations | 151 |
| 21 | Reduction in Personnel | 154 |
| 22 | Filling of Vacancies | 159 |
| 23 | Leaves of Absence | 166 |
| 24 | Moving Expenses | 171 |
| 25 | Personnel File | 173 |
| 26 | Grievance Procedures | 176 |
| 27 | System Board of Adjustment | 182 |
| 28 | Missing, Internment, Prisoner of War Benefits | 189 |
| 29 | Worker's Compensation Benefits | 191 |
| 30 | Union Security | 192 |
| 31 | Safety and Health | 199 |
| 32 | Savings Clause | 203 |
| 33 | Benefits | 204 |
| 34 | Retirement | 228 |
| 35 | Duration | 240 |

**AGREEMENTS, SUPPLEMENTAL AGREEMENTS**
**LETTERS OF UNDERSTANDING**

| | Page |
|---|---|
| "A" Scale Pay Protection | 243 |
| AFA Staff Travel | 245 |
| Benefit Plan Modifications | 246 |
| Blue Ribbon Committee | 247 |
| CJA Re-Opener | 248 |
| Commuter Policy | 249 |
| Commuter - Personal Emergency | 251 |
| Contract Dispute 2003-2009 | 254 |
| CRAF | 256 |
| Delhi | 263 |
| Dispute Resolution | 265 |
| Distribution Agreement (Equity) | 266 |
| Domestic Legal Rest | 269 |
| Donation Check-Off Procedures | 270 |
| Duty Free Commission | 274 |
| Economic Stabilization Guidelines | 275 |
| Exchange Rates | 278 |
| Extended Duty Time - International | 280 |
| Extended Duty Time | 282 |
| First Right of Hire | 283 |
| Foreign Nationals | 284 |
| Increase Trip Trade Allocation | 287 |
| Interim Seniority Ranking | 288 |
| International Flying Distribution | 289 |
| Low Cost Operation | 290 |
| Mailbox Criteria | 293 |
| Onboard Research | 294 |
| Operation Sideletter - Separate Operations | 295 |
| Paycheck Mailing | 298 |
| Preferential Bidding System | 299 |
| Pre-Medicare | 302 |
| Recognition of International Domicile Issues | 305 |
| Reserve 0500 Re-Opener | 307 |
| Reserve Pagers | 308 |
| Resignation - Special Pass Benefit | 309 |

|  | Page |
|---|---|
| Retirement-Annual Passes Retired | 310 |
| Retirement-PAA Retirement | 311 |
| Safe Airlines | 313 |
| Scope Agreement | 314 |
| 747 Dumbwaiter | 316 |
| Special Assignment Calculation | 317 |
| Taking Tickets Off Aircraft | 318 |
| TDY-Domestic and International | 319 |
| Training Jumbo Qualification | 321 |
| Transitional Terms | 323 |
| Uniform Stripes | 325 |
| Vacation Allocation-Merge | 326 |
| Wage Garnishments | 327 |
| Waiver of Transit Time | 328 |

**SECTION 1**

**RECOGNITION**

The Union, having been certified by the National Mediation Board, is hereby recognized by the Company as the collective bargaining representative of the craft or class of Flight Attendants in the employ of the Company to represent such employees and to negotiate and conclude an Agreement with the Company covering rates of pay, rules and working conditions, in accordance with the Railway Labor Act.

The Company recognizes the right of the Flight Attendants in its employ to perform Flight Attendant work of the nature they have customarily and traditionally performed; provided, however, that nothing herein shall be deemed to limit or restrain the Company's existing right to revise duties from time to time as the Company deems necessary for the needs of the service and provided, further, that nothing herein shall be construed to limit in any way the Company's right to assign supervisory or other personnel to perform non-Flight Attendant functions. Supervisory or other personnel of the Company shall not perform Flight Attendant work, except in emergencies, for instruction purposes, or as otherwise provided in this Agreement.

## SECTION 34
## RETIREMENT

1. The Company agrees that the benefits provided in the Retirement Plans will not be reduced without the prior agreement of the Union.

2. The Plans are subject to approval of the U.S. Treasury Department in the form of continuing qualification of the Plans by the Internal Revenue Service. In the event a Plan is not acceptable to the Internal Revenue Service, the Union and the Company agree to effect the revisions necessary to secure proper qualification.

A. United Airlines Flight Attendant <u>Defined Benefit</u> Pension Plan ("Defined Benefit Plan").

   1. The revisions contained herein to the <u>Defined Benefit</u> Plan shall become effective as of <u>July 1, 2003</u> and apply to employees covered by the Flight Attendant Agreement.

   2. Eligibility

      The eligibility rules for Flight Attendants to participate in the <u>Defined Benefit</u> Plan after the effective date will be one year of service.

   3. Service

      Prior to January 1, 1976, the amount of service credited has been determined under the <u>Defined Benefit</u> Plan as it was in effect during those years.

      On or after January 1, 1976 service means periods while receiving pay, including payment for sickness, disability, or vacation taken prior to retirement. Service also means periods while absent from active employment with the Company without pay for reasons of:

      a. Medical leave, or

      b. Layoff, furlough, military leave or any other leave granted under rules uniformly applied to employees in like situations provided the employee returns to active employment within 90 days after such absences end.

      c. Month of service means each calendar month during any portion of which the employee is credited with service as defined above.

      d. Year of service means the calendar year in which the employee was hired and any other calendar year during which the employee is credited with six (6) or more months of service.

      e. An employee terminating employment before meeting the vesting requirement will lose service with respect to the Plan accrued prior to such termination, unless such service is restored pursuant to Paragraph 13.

   4. Participation

      Participation means service on and after the completion of one year of service while pay is or was received from the Company whether in active service or as sick pay.

   5. Retirement Ages

      The retirement ages under the <u>Defined Benefit</u> Plan will be: normal retirement, age 65; early retirement, age <u>55</u> and ten years of service.

   6. Benefit Amount

      The amount of annual retirement benefit payable at normal retirement date to a Flight Attendant will be the greater of <u>a. or b.</u> below:

      a. <u>The amount of annual retirement benefit payable at normal retirement date (calculated as a single life annuity) and equal to one and forty-eight hundredths of a percent (1.48%) times Final Average Eligible Earnings times years of participation [not to exceed thirty-five (35)]. A Flight Attendant's Final Average Eligible Earnings will be equal to the highest consecutive sixty (60) months out of the last one hundred twenty (120) months immediately before termination of employment.</u>

         or

      b. <u>The Flight Attendant's "Accrued Benefit" determined as of June 30, 2003 in accordance with the provisions in paragraph 1) and 2) below and based on the assumption that such Flight Attendant's years of participation, eligible earnings and applicable factors, charges and adjustments did not change after that date. The "Accrued Benefit" determined as of June 30, 2003 shall be the Flight Attendant's protected benefit. The "Accrued Benefit" will be the sum of paragraph (1) and (2) below</u>.

1) The amount that has been credited to a Flight Attendant who was a participant in the Plan on January 1, 1981 will be determined as of that date to be greater of the following amounts:

   a) The amount of annual retirement benefit credited to the Flight Attendant as of December 31, 1980; or

   b) The amount determined by multiplying the Flight Attendant's actual annual compensation on December 31, 1980 by 2.2669% and further multiplying the product thereof by the Flight Attendant's years of participation prior to January 1, 1981; or

   c) The amount determined by multiplying the Flight Attendant's annual rate of compensation on December 31, 1980 [twelve (12) times the minimum monthly rate plus pay for ten (10) credited flight hours in excess of sixty-five (65) hours a month as applicable to the Flight Attendant on December 31, 1980) by 2.2669% and further multiplying the product thereof by the Flight Attendant's years of participation prior to January 1, 1981.

2) 2.2669% of the participating Flight Attendant's earnings each month after January 1, 1980.

Benefit amounts include any benefits (including annuity value of lump sum payments from company sponsored retirement plans other than the Flight Attendant Employee's Savings Plan) the Flight Attendant may be entitled to from any other retirement plans of the Company.

If an employee is reclassified to a Flight Attendant job, the employee will retain the accrued benefits (actuarially adjusted to reflect the normal retirement date for Flight Attendants) as then provided for by the prior job's Plan. If a Flight Attendant is reclassified out of a Flight Attendant job, the employee will be credited with normal retirement date benefits equal to the accrued benefits applicable to the Flight Attendant's normal retirement date (actuarially adjusted to reflect the normal retirement date of the new job's Plan).

Benefits due under the <u>Defined Benefit</u> Plan are in addition to any Social Security benefits.

7. Early Retirement Benefits

   In the event of early retirement, retirement benefits will be reduced at the rate of three per cent (3%) for each year prior to age 60 that the payments begin. There will be no reduction upon retirement at or after age 60.

8. Vesting

   The vesting provision under the <u>Defined Benefit</u> Plan will be five (5) years of service. Payment of benefits to any employee with a vested benefit who terminates employment prior to early retirement will begin at age 65 or, at the election of the individual, on or after attainment of age <u>55</u> with the amount determined on an actuarially reduced basis from age 65 if the employee was hired on or after April 1, 1980; or if the employee's date of employment is prior to April 1, 1980, on an actuarially reduced basis from age 60 with no reduction for payments beginning on or after age 60.

9. Form of Retirement Benefit Payment

   A single life annuity form of payment will be the normal form of payment for single participants. Instead of a life annuity form of payment the contingent annuitant form of payment (with a 50% continuation to the spouse) will be the normal form of payment for married participants unless the participant elects, anytime before benefit payments begin, the life annuity form or a retirement option described below. Retirement benefits will be actuarially adjusted for payment in such contingent annuitant form (instead of a life annuity form).

   The retirement options under the <u>Defined Benefit</u> Plan are the ten year certain option, the contingent annuitant option (50%, 66-2/3% or 100%), the level income option, <u>and the pop-up feature</u>. Options may be elected anytime before benefit payments commence. Retirement benefits will be actuarially adjusted for payment in the optional form (instead of a life annuity form).

10. Pre-Retirement Death Benefits

    A participant who has met the requirements for early retirement under the <u>Defined Benefit</u> Plan will automatically be covered by a Pre-Retirement Death Benefit in the event of death thereafter and before benefit payments under the <u>Defined Benefit</u> Plan begin if at the time of death the participant is survived by a spouse (to whom the

participant has been married throughout the year preceding death) or is survived by at least one natural or adopted child (under age 21) of the participant.

The monthly amount of the Benefit will be 50% of the participant's accrued monthly benefit as of the date of death.

Payment of the benefit will begin as of the first day of the month following the participant's death and will be payable to such eligible spouse for life or, if there is no eligible spouse or such spouse dies before the youngest of such participant's children attains the age of 21, to such participant's children under age 21 until the youngest of such children attains the age of 21 (payment of such benefit to be divided equally among each such child until the earlier of each such child's death or attainment of age 21 and upon such event each such child's share will be divided equally among such children who are then still living and under age 21).

No reduction in a participant's benefits under the <u>Defined Benefit</u> Plan will be made as a result of this benefit or as a result of having elected a similar benefit under the Plan as in effect prior to the effective date for these revisions to the Plan.

11. Employee Contributions

    None

12. Company Contributions

    The Company will contribute actuarially determined amounts that will be sufficient to provide the benefits that are described herein.

13. Re-employment

    If an employee whose employment terminated is later re-employed, the employee's prior service and participation will be restored with respect to the Plan immediately upon re-employment, provided the prior employment period exceeds the whole calendar years constituting the break in employment, or the employee retained a vested interest in any benefits attributable to Company contributions to such Plan with respect to such prior employment.

    A retired employee who is re-employed by the Company will not receive retirement benefits while re-employed. When the employee again terminates employment, pension benefits will be resumed at

that time and will be in the amount and form the employee was receiving immediately prior to the date of re-employment, if the employees initial retirement occurred at or after normal retirement age. If the employee retired prior to normal retirement date, the period of re-employment prior to age sixty-five (65) will be added to the prior service and participation for the purpose of calculating a new retirement benefit. The benefit will be actuarially adjusted for the benefits such employee who retired early received prior to re-employment.

14. Union Leave of Absence

    A Flight Attendant who is on an authorized leave of absence for Union business will, if otherwise eligible to be a participant in the <u>Defined Benefit</u> Plan, continue to be considered a participant in the Plan and will, for purposes of accruing benefits under the Plan, be considered to receive earnings for each month while on such leave equal to the minimum monthly pay plus the pay for twenty (20) credited flight hours in excess of sixty five (65) hours a month as would otherwise be applicable to the Flight Attendant. The Union will reimburse the Company therefor.

15. Calculation

    Interpolation by full months will be used for less than full years of age, service and participation. Service and participation includes a fraction of a month as a full month; age does not.

16. Maximum Benefit

    A limit on the amount of benefits payable under the <u>Defined Benefit</u> Plan will be imposed pursuant to the terms of the Employee Retirement Income Security Act, on the basis of the maximum limit permissible thereunder.

17. Late Retirement Benefit

    Various Articles and Sections of the Plan will be changed to reflect that an employee who works past her/his Normal Retirement Age shall continue to accrue benefits until her/his actual date of retirement <u>(effective July 1, 2003 subject to the maximum years of participation limitation)</u>. Such accrual shall take into account all salary changes, service and wage increases, and benefit improvements.

B. Flight Attendant 401(k) Plan

The Company will maintain a 401(k) Plan for Flight Attendants who are covered by the United Flight Attendant Agreement. Such Plan shall contain accounts for those participants who were participants in the Flight Attendant Savings Plan who have not withdrawn their Savings Plan account balance.

The following will be significant features of this 401(k) Plan:

1. Eligibility - The Flight Attendant's date of hire.

2. Flight Attendant contributions will be permitted on a pre-tax basis to the maximum allowed by Section 401(k) of the Internal Revenue Code.

3. Withdrawals - Flight Attendants, while considered an employee of the Company, will be allowed to withdraw employee contributions made on a pre-tax basis only if the Flight Attendant is at least age 59 1/2 or for a financial hardship. A financial hardship is determined according to the requirements of the Internal Revenue Code and applicable regulations.

    Flight Attendants will be allowed to withdraw employee contributions made on a post-tax basis as permitted by the Internal Revenue Code and applicable regulations.

4. Expenses of Plan

    The Company will continue to pay the expenses of the Plan to the same extent as provided under the prior Savings Plan.

5. Retirement Ages - Normal Age 65; Early - Age 55.

6. Investment of Accounts

    a. The Company will offer to Flight Attendants the same investment options that are contained in the 401(k) Plans for salaried, management and IAM represented employees.

    b. AFA may at its discretion exercise veto power over the selection of any fund it deems inappropriate for Flight Attendant investment.

    c. Participants will have the opportunity to self-direct their accounts.

   d. Participants shall be able to switch future allocations and existing deferrals from one account to another on a daily basis. This includes accounts formerly held in the Flight Attendant Savings Plan.

7. Flight Attendant earnings for the purpose of pension, insurance, etc., shall mean total earnings before contributions to the 401(k) Plan.

8. The 401(k) will maintain a loan feature. The Flight Attendant's account balance will be charged an administrative fee, consistent with the IAM and salaried and management plans when the Flight Attendant applies for a loan.

9. Quarterly statements shall be provided for Plan participants within sixty (60) days from the end of the quarter.

10. In the event the Company provides any other employee group(s) a Company matching contribution to a 401(k) Plan the Company shall incorporate such percentage matching contributions in terms equal to the benefit provided to the other employee group(s) to the Flight Attendant 401(k) Plan. This provision does not apply a) if an employee group receives a 401(k) match in lieu of a restoration of wages or benefits reduced prior to the signing of this Agreement, or b) if Company contributions are increased to the Pilot Directed Account Plan or to the 401(k) benefit for salaried employees hired February 1, 1994 and later.

D. United Air Lines, Inc. Flight Attendant Retirement Board

1. There shall be established a Retirement Board for the purpose of hearing and determining all disputes between the Company and its Flight Attendant employees, retirees, and their beneficiaries, which may arise under the terms of the Flight Attendant Savings Plan, 401(k) Plan, or the Defined Benefit Plan concerning participation in or claims for benefits under the Plan(s), including hardship withdrawals, provided, however, that the Company or the Pension and Welfare Plans Administration Committee ("PAWPAC"), as the case may be, shall have exclusive authority to select, appoint, replace, deal with, and direct trustees, insurance companies, investment managers, actuaries, and any other entities involved with the Plan(s). The Retirement Board shall be constituted as follows:

a. The Retirement Board shall consist of four members, two of whom shall be selected by the Company and two of whom shall be selected by the Union. The Company shall establish its own rules for the selection of the members of the Retirement Board to be selected by it, and the Union shall likewise establish its own rules for the selection of the members of the Retirement Board to be selected by it. The Company shall also select one alternate member who may act for either of the two members of the Retirement Board appointed by the Company in the event of absence, or inability to act, of one of such members, and the Union shall likewise select one alternate member who may act for either of the two members of the Retirement Board appointed by the Union in the event of absence, or inability to act, of one of such members. Either the Company or the Union at any time may remove a member appointed by it and may select a member to fill any vacancy among the members selected by it. Both the Company and the Union shall, in writing, notify each other respectively concerning such selections, which shall continue until further written notice.

b. The Retirement Board members may, at the expense of the party appointing them, utilize outside consultants, and such consultants may be present at any meeting or hearing of the Retirement Board held in accordance with this subsection and will have access to all data necessary and pertinent to such meeting.

c. Three members of the Retirement Board shall constitute a quorum for the transaction of business. At all Retirement Board meetings, Company members present shall be entitled to one vote each, and Union members present shall be entitled to one vote each. If at any such meeting two Company members are not present, the Company member present may cast two votes, and if two Union members are not present, the Union member present may cast two votes.

d. The Retirement Board shall have the authority to establish rules for the conduct of business or hearings before it, and to appoint sub-committees from among the members of the Retirement Board to handle any problem within the jurisdiction of the Retirement Board. Such subcommittee shall report conclusively to the Retirement Board.

e. The compensation, travel, and other reasonable living expenses, if any, of members of the Retirement Board selected by the Company shall be paid by the Company. The compensation, travel, and other reasonable living expenses, if any, of members of the Retirement Board selected by the Union shall be paid by the Union.

f. Any party to a dispute to be heard by the Retirement Board may submit written facts or arguments and may request an oral hearing.

g. The Board will notify in writing any Plan Participant or Beneficiary whose claim has come before the Board of its decision within thirty (30) days after the submission of written arguments or the conclusion of an oral hearing.

h. Once a participant or a beneficiary receives a denial of a claim or hardship withdrawal, a claimant will have sixty (60) days to appeal the decision to the Retirement Board.

i. All decisions and actions taken by the Retirement Board shall be by the affirmative vote or agreement of not less than three (3) members. Such affirmative vote or agreement shall be in writing if given other than during a meeting of the Retirement Board. All decisions of the Retirement Board shall be final and binding upon the Company, the Union, and any other person having an interest in, under or derived from the Plan(s), including the trustee, to the extent permitted by law. No ruling or decision of the Retirement Board in one case shall create a basis for a retroactive adjustment in any prior case.

j. If the Retirement Board shall fail to agree on any matter of dispute coming before it, it shall within ten (10) days from the date of such failure to agree, designate an Impartial Referee with knowledge of retirement plans. If the Retirement Board does not agree upon the selection of an Impartial Referee within such ten (10) day period, then either the Company or the Union may apply to the National Mediation Board for the designation by such Mediation Board of an Impartial Referee. The matter or dispute shall be submitted to the Retirement Board sitting with the Impartial Referee who shall act as Chairperson during the proceedings pertaining to such matter. Such Impartial Referee shall have one vote. Three affirmative votes shall be required to render a decision or determination on

matters coming before the Retirement Board sitting together with the Impartial Referee. The Retirement Board will not have jurisdiction or power to add to or subtract from the Plan or any amendments thereto.

k. The compensation and expenses of the Impartial Referee and expense incident to the conduct of proceedings coming before the Retirement Board shall be shared equally between the Company and the Union.

l. The Retirement Board shall keep a record of all its proceedings and shall keep, or cause to be kept, all such books, accounts, records or other data as may be necessary or advisable in its judgment.

m. Meetings of the Retirement Board may be called by mutual agreement of the members at any time without notice or by any two members of the Retirement Board upon thirty (30) days' notice to the other members of the Retirement Board. Such meetings shall be conducted at the Company's Office unless otherwise agreed to by the members of the Retirement Board.

2. Powers of Retirement Board

The Retirement Board shall have jurisdiction over disputes between the Company and its Flight Attendant employees, retirees, and their beneficiaries which may arise under the terms of the Flight Attendant Savings Plan, 401(k) Plan, or the <u>Defined Benefit</u> Plan concerning participation in or claims for benefits under the Plan(s), including hardship withdraws, provided, however, the Company or PAWPAC shall have exclusive authority to select, appoint, replace, deal with and direct trustees, insurance companies, investment managers, actuaries and any other entities involved with the Plan(s). All decisions of the Retirement Board shall be final and binding upon the Company, the Union and any other person having an interest in, under or derived from the Plan(s), including the trustee, to the extent permitted by law. The Board shall have no power to add to or subtract from or modify any of the terms of the Plan(s). The Retirement Board shall have the power to establish rules of procedure for the conduct of its business and of hearings before it, which rules shall not be inconsistent with the provisions of this Subsection D.

3. Review Functions

The Retirement Board shall have the right to review the following in connection with the Flight Attendant Savings Plan, 401(k) Plan and the <u>Defined Benefit</u> Plan:

a. All data that is necessary and pertinent to the claim being considered by the retirement board; and

b. Such other data as is necessary and pertinent to the discharge of the duties of the retirement board as described herein.

4. Liability

The Retirement Board and any members thereof shall be entitled to rely upon the correctness of any information furnished by the Company and the Union. Neither the Retirement Board nor any of its members, nor the Union, nor any officers or other representatives of the Union, nor the Company, nor any Officers or other representative of the Company, shall be liable because of any act or failure to act on the part of the Retirement Board, or any of its members, except that nothing herein shall be deemed to relieve any such individual from liability for her/his own fraud or bad faith.

5. Indemnity

The Company as to employer members and alternate employer members of the Retirement Board; the Union as to employee members and alternate employee members of the Retirement Board; shall indemnify, save and hold harmless such members, respectively, from any and all loss, costs, damage or expense which such members or any of them may incur or sustain, arising out of the discharge of the responsibilities under the Plan of the Retirement Board, except to the extent that the same shall result from the gross negligence or willful misconduct upon the part of such member or members.