## FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
HAL NEIER
PHILIPPE ADLER
MATTHEW S. HAIKEN
PAUL J. FISHMAN
RICHARD M. HOFFMAN
SCOTT M. BERMAN
LANCE J. GOTKO
ELLEN A. HARNICK
ROBERT S. LOIGMAN
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN

NORMAN ALPERT
MARC N. EPSTEIN
JOHN R. CAHILL
ELIEZER M. HELFGOTT
COUNSEL

1633 BROADWAY

NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100

FACSIMILE (212) 833-1250

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1110

WRITER'S DIRECT FAX
(212) 373-7910

E-MAIL
GLERNER@FKLAW.COM

SNEHA DEVADASON
CRAIG J. CODLIN
ANNE E. BEAUMONT
JEFFREY H. WECHSELBLATT
MELISSA E. LONDON
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MARCI R. ETTER
MALA AHUJA HARKER
JOSHUA A. POLAK
HEATHER WINDT
LISA S. GETSON*
SHEILA V. FLYNN
ASAF REINDEL
JOHN E. FREELAND
JOHN N. ORSINI
JEFFREY R. WANG
LAURENCE D. BORTEN
JENNY F. COHEN
VANESSA RICHARDS

*ADMITTED IN IL ONLY

March 30, 2005

Bradley D. Belt
Executive Director
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, DC 20005-4026
belt.bradley@pbgc.gov

Re: <u>United Airlines Flight Attendant Defined Benefit Plan</u>

Dear Mr. Belt:

On behalf of the Association of Flight Attendants ("AFA"), earlier today we sent to members of the Staff of the Pension Benefit Guaranty Corporation ("PBGC") a term sheet summarizing the principal terms and conditions under which AFA proposes that the UAL Corporation ("UAL") Flight Attendant Defined Benefit Plan (the "APA Plan") can be maintained. As you are aware, the Staff and representatives of the PBGC have met with AFA representatives on a number of occasions to discuss our mutual desire to explore all possibilities to continue the AFA Plan. The term sheet contemplates that the PBGC will provide financial support, in a form to be determined, as a critical component of the arrangements to preserve the AFA Plan. Without the PBGC's financial support, it is highly unlikely that AFA will succeed in negotiating to retain the AFA Plan in a reorganized UAL. AFA believes strongly that the transaction contemplated by the term sheet can form the basis on which AFA's and the PBGC's shared objective of continuing the AFA Plan can be accomplished. In addition, such a transaction will enable the PBGC to avoid significant termination liability and to fulfill an important aspect of its mission of ensuring the continued existence and solvency of defined benefit pension plans for those workers who have bargained for them.

373512.2

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Bradley D. Belt        2         March 30, 2005

    UAL has steadfastly maintained that termination and replacement of its defined benefit pension plans is necessary if UAL is to be successfully reorganized. In UAL's Annual Report on Form 10-K for the fiscal year ended December 31, 2004, UAL stated in its Management's Discussion and Analysis of Financial Condition and Results of Operations that "[w]e believe that in order to obtain non-guaranteed exit financing, and successfully reorganize and emerge from Chapter 11 bankruptcy proceedings, it is necessary to terminate and replace our defined benefit pension plans." AFA does not believe that UAL has seriously considered the possibility that a financially-sound, reorganized UAL can emerge from bankruptcy with the AFA Plan unchanged. UAL has sought to paint all four of its defined benefit pension plans with the same broad brush despite the existence of crucial differences between the AFA Plan and the other three defined benefit plans that UAL had historically maintained for its workforce. AFA strongly believes that important factors unique to the AFA Plan militate in favor of preserving the AFA Plan.

    First, the AFA Plan, by any reasonable measure, is affordable for UAL. This is in no small part due to the significant reduction in benefits agreed to by AFA in 2003. In fact, as a result of these changes, over the next six years the actuarial "normal cost" (more or less the actuarial present value of the benefits earned) is actually less than the defined contribution plan currently offered by UAL. Accordingly, it is not as if the benefits will explode should the AFA Plan not be terminated. Indeed, the AFA Plan is clearly the least expensive pension plan for UAL to maintain. Over the next six years, the aggregate funding needs of the AFA Plan are projected to be approximately $500 million, representing only approximately 11% of the total pension obligations of UAL in respect of the four defined benefit plans that UAL had historically maintained.

    Second, although the AFA Plan provides for a very modest level of benefits for this class of non-highly compensated employees, it represents an indispensable portion of the individual participants' expected retirement income. The projected benefit at retirement for a flight attendant with an assumed salary of $45,640 who has worked 26 years and retires at age 56 (the historical average age of a flight attendant at retirement) is approximately $1,575 per month, hardly the foundation of a sumptuous retirement. Should UAL be permitted to terminate the AFA Plan, this average flight attendant's projected retirement benefit would be reduced to approximately $1,000 per month, a pension benefit that might not provide for a standard of living at retirement that is above the poverty level. The defined contribution plan that UAL is proposing to substitute for the AFA Plan will replace, by UAL's own calculations, only a small fraction of the benefits that the AFA Plan is designed to provide.

    Lastly, unlike any other labor group, AFA's members are offering to invest their own funds to contribute to reestablishing the solvency of the AFA Plan. AFA is prepared to contribute to the AFA Plan the UAL equity it will receive pursuant to the reorganization, obtained at the cost of nearly $1 billion in wage and other contractual reductions, as well as any note that UAL would issue to AFA to replace the value of the

373512.2

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Bradley D. Belt                  3                  March 30, 2005

benefits AFA would lose under UAL's proposal to terminate the AFA Plan. In addition, the flight attendants will forego participating in UAL's proposed defined contribution plan and instead direct that those contributions be made directly to the AFA Plan.

      UAL has sought to create significant momentum towards terminating all of its defined benefit pension plans, including the AFA Plan. A clear and unambiguous indication from the PBGC that the termination of the AFA Plan is not necessary for UAL to reorganize and emerge successfully from Chapter 11 is urgently needed if the AFA Plan is to be preserved. As you know, the Section 1113 and pension termination litigation is currently scheduled to begin on April 11, 2005. AFA strongly believes that with the influence and support of the PBGC, including some form of financial participation, the AFA Plan can be preserved, thereby enabling the PBGC to carry out its mission of ensuring the continued existence of defined benefit plans for those who have bargained for them. By working with the AFA to retain the AFA Plan, the PBGC can avoid incurring the enormous liability that will result from termination and preserve the retirement security of the more than 20,000 flight attendants covered by the AFA Plan.

      We appreciate your consideration of our proposal and look forward to hearing from you.

Very truly yours,

Gregg S. Lerner

cc: Jeffrey Cohen
    John Spencer
    Greg Davidowitch
    Robert Clayman

373512.2