## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:05CV01036 |
| PENSION BENEFIT GUARANTY CORPORATION | ) ) ) | |
| Defendant. | ) ) ) ) ) | Hon. Judge Ellen Segal Huvelle |

## AMICI CURIAE MEMORANDUM OF MEMBERS OF CONGRESS, GEORGE MILLER AND JAN SCHAKOWSKY, IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Amici curiae* Members of the United States House of Representatives, George Miller and

Jan Schakowsky, hereby submit this Memorandum for consideration by the Court in support of

the Plaintiff's motion for a preliminary injunction in the above-styled case.

### INTEREST OF AMICI CURIAE

*Amici*'s interest in this matter is in preserving Congress's intent to strike a fair and

equitable balance between the collective bargaining rights of employees, the needs of business in

bankruptcy, and the proper role of the federally-chartered Pension Benefit Guaranty Corporation

(PBGC) in encouraging the continuation and maintenance of voluntary pension plans.

Additionally, our interest is in the broader public policy goal of preserving the defined benefit

plan system and stemming a wider crisis in the airline industry's and the country's retirement

system. We respectfully request that the Court consider our views when taking up the question

1

presented by this case, namely, whether to impose a preliminary injunction against the agreement

between the PBGC and United Airlines to initiate involuntary terminations.

## ARGUMENT

*Amici* agree with Plaintiff Association of Flight Attendants' assertion that the Agreement

between the PBGC and United Airlines is a final agency decision subject to this Court's review

and injunction. While the Agreement uses language such as "[i]f and when the PBGC issues

Notices of Determination" (emphasis added), such language undoubtedly was inserted to deal

with the absurd proposition that the PBGC could agree to institute an involuntary termination of

pension plans prior to making the statutorily-required independent determination that such an

involuntary termination should occur. Nevertheless, this nonsensical process is precisely what

the PBGC has agreed to with United Airlines.

As Plaintiff has correctly put it, the terminations of all United employee pension plans are

"pre-ordained" by this agreement – and the parties to the agreement understood as much. On

April 22, 2005, the same day that the agreement was reached, for instance, the PBGC issued a

press release stating: "Under the terms of the agreement, which must still be approved by the

bankruptcy court overseeing UAL's restructuring, the PBGC would terminate and become

trustee of the company's four pension plans and the agency's claims against the company would

be settled." See PBGC Public Affairs, "PBGC Reaches Pension Settlement with United

Airlines," April 22, 2005, at http://www.pbgc.gov/news/press_releases/2005/pr05_36.htm.  The

PBGC's understanding of the agreement comports with United's understanding of the

agreement's promised "certainty and closure," which the company touted to the Official

Committee of Unsecured Creditors on April 29, 2005, as recounted in Plaintiff's Memorandum

of Points and Authorities of May 20, 2005, submitted to this Court. See Memorandum of Points

and Authorities in Support of Motion for a Preliminary Injunction of Association of Flight Attendants-CWA, AFL-CIO, May 20, 2005, at 29. If the essential purpose of the agreement was not to allow plan terminations to proceed favorable to United, at the expense of the rights of plan participants and their representatives afforded by ERISA Section 4041, then there would have been no reason to stay the ERISA Section 4041 proceedings already underway following the bankruptcy court's approval of the agreement. Instead, the core purpose of the agreement is to avoid the requirements of Section 4041 and yet still proceed with, for all intents and purposes, *voluntary* terminations, which have been consistently sought by United Airlines, under the guise of Section 4042 involuntary terminations, designed to purge the termination process of the rights of plan participants and their representatives.

Over the years, Congress has consistently narrowed the circumstances under which an employer may terminate a pension plan. As Plaintiff correctly points out, Congress passed the Single-Employer Pension Plan Amendment Act (SEPPAA) to impose greater restrictions on employer-initiated voluntary terminations, including respect for the collective bargaining rights of affected employees under ERISA 4041(a)(3). Those restrictions are rendered meaningless if an employer may avoid exhausting good-faith bargaining with its employees' representatives and avoid obtaining judicial approval of any voluntary termination and instead bargain with the PBGC to "initiate termination proceedings." In this case, the PBGC and United have negotiated away the statutory framework for pension plan terminations with an agreement that is clearly outside the bounds of either party's authority. The Court should not permit United and the PBGC to conspire to undermine the already on-going voluntary termination process and thereby exclude the interests of participants that Congress had sought to protect in the bankruptcy and plan termination processes.

## CONCLUSION

Accordingly, *Amici* respectfully request that the Court grant the Plaintiff's motion for a preliminary injunction.

Respectfully submitted,


GEORGE MILLER
Member of Congress
Senior Democrat
Committee on Education & the Workforce

2101 Rayburn House Office Building
Washington, DC 20515
Tel. 202-225-3725
Fax 202-226-4864

Date:   May 31, 2005

JAN SCHAKOWSKY
Member of Congress

4

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion and Memorandum was sent via facsimile and first class mail on this 31st day of May, 2005, to the following addresses:

Jeffrey B. Cohen, Chief Counsel
PBGC
Office of the Chief Counsel
1200 K Street, N.W.
Washington, DC 20005
Facsimile: 202-326-4112

Robert S. Clayman
Guerrieri, Edmond, Claymon & Bartos, P.C.
1625 Massachusetts Ave., N.W.
Suite 700
Washington, DC 20036
Facsimile: 202-624-7420

RECEIVED
2005 MAY 31 PM 4:50
NANCY M. MAYER-WHITTINGTON
CLERK
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA