IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                      )
ASSOCIATION OF FLIGHT                 )
ATTENDANTS-CWA, AFL-CIO,              )
                                      )
        Plaintiff,                    )
                                      )
    v.                                ) Civil Action No. 1:05CV01036
                                      )
PENSION BENEFIT GUARANTY              )
CORPORATION,                          )
                                      )
        Defendant.                    )
_____ )
```

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**[1/]

1.   This is an action brought by the Association of Flight Attendants-CWA, AFL-CIO ("AFA"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking an injunction against Defendant the Pension Benefit Guaranty Corporation ("PBGC") to immediately halt the PBGC's involuntary termination of the UAL Corporation Flight Attendant Defined Benefit Plan ("the Plan") and/or to restore the Plan if the Plan is terminated without following the requirements of ERISA.

**JURISDICTION AND VENUE**

2.   This Court has jurisdiction over the present action under ERISA §§ 4003(f), 29 U.S.C. §§ 1303(f), and under 28 U.S.C. §§ 1331 and 1337.

---

[1/]   Fed. R. Civ. P. Rule 15(a) permits a party to amend a pleading as a matter of course at any time before a responsive pleading is served.  PBGC has yet to respond to AFA's original Complaint.

3.  Venue is proper in this district pursuant to ERISA § 4003(f)(2), 29 U.S.C. § 1303(f)(2), because PBGC may be sued in this district under that statute.

## PARTIES

4.  Plaintiff AFA is an unincorporated airline labor organization headquartered in Washington, D.C.  AFA is the duly authorized and recognized exclusive representative for all flight attendants employed by United Air Lines Corporation ("United").  It is an employee organization representing participants for purposes of collective bargaining with respect to the Plan as provided in ERISA §§ 4003(f)(1), 29 U.S.C. §§ 1303(f)(1).  AFA brings this action on its own behalf and on behalf of the Plan participants whom it represents.

5.  Defendant PBGC is a corporation established within the United States Department of Labor pursuant to ERISA § 4002, 29 U.S.C. § 1302, which has powers to terminate pension plans, pursuant to the requirements specified in ERISA.

## FACTS

6.  The Plan is a pension plan as defined in ERISA § 3(2), 29 U.S.C. § 1002(2), which provides retirement benefits to 28,402 Plan participants: 15,254 active employees; 7,949 deferred employees; and 5,199 retirees.

7.  United has been operating as a debtor-in-possession under Chapter 11 of the bankruptcy code, 11 U.S.C. § 101, et seq., since December 9, 2002.

8. Title IV of ERISA provides the exclusive means for terminating single-employer pension plans. In order to effect a voluntary distress termination under Section 4041 of ERISA, the termination must not violate the terms of any existing collective bargaining agreement ("CBA"). This requirement is commonly referred to as "the contract bar".

9. On November 25, 2005, United moved the bankruptcy court for authority to reject its CBAs, pursuant to Section 1113(c) of the Bankruptcy Code, 11 U.S.C. § 1113(c). Specifically, United sought authority "to eliminate any provisions of [its] CBAs that would prohibit a distress termination of the Company's [four] pension plans." United sought an order to allow it to remove ERISA's contract bar and effect a voluntary discharge termination.

10. In order to reject a CBA under the bankruptcy code an employer must follow the strict requirements of 11 U.S.C. § 1113, including demonstrating to the court that the proposed modifications to the CBA are necessary to permit a successful reorganization. Moreover, the bankruptcy court's decision on that standard is subject to appeal.

11. While the Section 1113 process was proceeding in the bankruptcy court, PBGC maintained repeatedly that the Plan should be maintained in any successful reorganization effort.

12. On January 21, 2005, the bankruptcy court issued a scheduling order in which it set May 10 for the pre-trial hearing should United file a motion to reject its CBAs under Section 1113 and for a distress termination under Section 4041 of ERISA. On May

11, the court scheduled the evidentiary hearing on this motion to begin.

13. In a letter dated April 4, 2005, the Executive Director of PBGC characterized AFA's proposals as "constructive" and reiterated the agency's position "that the AFA plan can and should be maintained by the company upon emergence from Chapter 11." He added: "Based upon available information, we continue to believe that the interests of participants and the pension insurance program would best be served by the continuance of the AFA plan."

14. On April 11 2005, United filed a motion under Section 1113 of the bankruptcy code and Section 4041 of ERISA to terminate the Plan.

15. On April 14, United filed a distress termination notice with the PBGC and issued the notice, as required by law, to the participants of the Plan.   29 U.S.C. §§ 1341(b)(2)(A) & 1341(b)(2)(B).

16. On April 14, PBGC filed an emergency motion to postpone consideration of United's motion for distress terminations of its defined benefit plans, calling United's motion "premature" and arguing that the Company had failed to show that the plans could not be maintained. PBGC explained that, until United "provide[s] an updated business plan ... and file[s] its plan of reorganization ... PBGC cannot even determine its position on whether United can afford to maintain the Pension Plans coming out of bankruptcy."

17. On April 22, United announced that it had reached a settlement agreement with PBGC (the "settlement agreement"), which

-4-

would result in the termination of all four of United's defined benefit plans.

18. Pursuant to the settlement agreement, United is to provide three tranches of securities with a total value of $1.5 billion, ($500 million of which is contingent on certain conditions subsequent), to PBGC in exchange for PBGC terminating the four pension plans, including the Flight Attendant Plan.

19. Under the terms of the Agreement, PBGC will initiate termination of the Plan pursuant to the involuntary termination provision of ERISA § 4042. Because an involuntary termination is initiated by PBGC under that section, the requirements of Section 4041 -- including removal of the contract bar and satisfaction of the distress termination criteria -- do not apply.

20. To proceed with an involuntary termination, PBGC must first make an independent cause determination under ERISA § 4042(a), before seeking either court enforcement or voluntary settlement with the plan administrator/employer.

21. PBGC did not make a cause determination pursuant to ERISA § 4042(a) prior to entering the settlement agreement with United.

22. Plan termination is an express, material condition of the settlement agreement, and PBGC forfeits any claim to the $1.5 billion under the settlement agreement if the Plan is not terminated.

23. On May 11, the bankruptcy court entered an order approving the settlement agreement. In its order approving the settlement, the bankruptcy court recognized that "[a]ggrieved

parties have their rights under Section 4003(f) of ERISA, 29 U.S.C. § 1303(f), to bring actions against PBGC to challenge the propriety of its actions under ERISA."

24.   On June 23, PBGC announced in several major newspapers that it would terminate the Plan, effective June 30, 2005.  PBGC's decision to authorize termination of the Plan without satisfying the requirements of ERISA as outlined in this Amended Complaint, is arbitrary and capricious, and a violation of ERISA.

## VIOLATIONS OF ERISA

1.   In violation of Section 4041, 29 U.S.C. § 1341, PBGC is undertaking the involuntary termination of the Plan, when the termination was, in fact, initiated by United and not PBGC.  Since termination of the Flight Attendant Plan was initiated by United, PBGC cannot, under Section 4041, terminate the Plan since Section 4041's contract bar prohibits it from doing so.  By proceeding with an involuntary termination of the Plan, PBGC is violating Section 4041 of ERISA.  29 U.S.C. § 1341.

2.   By entering into a settlement agreement that effectively terminates the Plan by settlement without having first made a cause determination under ERISA § 4042(a), PBGC has violated ERISA § 4042.  29 U.S.C. § 1342.

3.   PBGC's decision to terminate the plan with an effective date of June 30, 2005 was arbitrary and capricious, in further violation of ERISA § 4042, 29 U.S.C. § 1342.

4.   As a direct result of PBGC's actions, AFA's membership stands to lose a significant portion of their retirement benefits

in a PBGC take-over of the Plan. Moreover, AFA will suffer irreparable injury if an injunction does not issue because its flight attendants will make decisions regarding whether to continue their employment with United on the basis of the benefits available to them upon termination and replacement of the Plan, as opposed to the benefits available under their current Plan. It will not be possible to reverse the effects of these decisions after a judgment on the merits.

     5.   Termination of the Plan without satisfying the requirements of ERISA will harm the public interest in administration of ERISA and protection of retirement plans under the terms of that statute.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AFA respectfully requests that this Court issue:

     1.   An injunction directing PBGC from proceeding with termination of the Plan, and/or to restore the Plan in accordance with ERISA § 4047, 29 U.S.C. § 1347.

     2.   A judgment declaring the rights and obligations of the parties.

     3.   Such other and further relief as may seem just and proper to this Court, together with the costs, expenses and legal fees from this proceeding.

                                    Respectfully submitted,


                                    /s/ Robert S. Clayman
                                  Robert S. Clayman
                                  D.C. Bar No. 419631
                                  Jonathan P. Rolfe
                                  D.C. Bar No. 474296
                                  Carmen R. Parcelli
                                  D.C. Bar. No. 484459
                                  Matthew E. Babcock
                                  D.C. Bar No. 488107

                                  GUERRIERI, EDMOND, CLAYMAN
                                  & BARTOS P.C.
                                  1625 Massachusetts Avenue, N.W.
                                  Suite 700
                                  Washington, DC 20036
                                  (202) 624-7400

Dated: June 30, 2005        Counsel  for Association of Flight
                                  Attendants-Communications Workers of
                                  America, AFL-CIO

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on June 30, 2005, I electronically filed AFA's First Amended Complaint For Injunctive And Declaratory Relief with the Clerk of the Court using the CM/ECF system.  I further certify that on June 30, 2005, a true and correct copy of the same was served by electronic mail on:

        Jeffrey B. Cohen
        Chief Counsel
        Pension Benefit Guaranty
          Corporation
        1200 K Street, N.W.
        Washington, D.C.  20005
        cohen.jeffrey@pbgc.gov

        Attorney for defendant PBGC

                            /s/ Jonathan Rolfe
                            Jonathan Rolfe