IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS – CWA, AFL-CIO,<br><br>    Plaintiff,<br><br>    v.<br><br>PENSION BENEFIT GUARANTY CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 1:05CV01036<br><br>Judge Ellen Segal Huvelle |

ANSWER OF PENSION BENEFIT GUARANTY CORPORATION

The Pension Benefit Guaranty Corporation ("PBGC") hereby responds to the allegations set forth in the Amended Complaint as follows:

1. This is an action brought by the Association of Flight Attendants-CWA, AFL-CIO ("AFA"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking an injunction against Defendant the Pension Benefit Guaranty Corporation ("PBGC") to immediately halt the PBGC's involuntary termination of the UAL Corporation Flight Attendant Defined Benefit Plan ("the Plan") and/or to restore the Plan if the Plan is terminated without following the requirements of ERISA.

ANSWER: PBGC admits that the Plaintiff purports to have brought this action under ERISA.

PBGC denies that the Plaintiffs are entitled to any relief under ERISA.

2. This Court has jurisdiction over the present action under ERISA §§ 4003(f), 29 U.S.C. §§ 1303(f), and under 28 U.S.C. §§ 1331 and 1337.

ANSWER: PBGC admits that the Court has jurisdiction over the present action pursuant to 29 U.S.C. §§ 1303(f). PBGC denies the remaining allegations of paragraph 2.

3. Venue is proper in this district pursuant to ERISA § 4003(f), 29 U.S.C. § 1303(f)(2), because PBGC may be sued in this district under that statute.

ANSWER: Admitted.

4.      Plaintiff AFA is an unincorporated airline labor organization headquartered in Washington, D.C.  AFA is the duly authorized and recognized exclusive representative for all flight attendants employed by United Air Lines Corporation ("United").  It is an employee organization representing participants for purposes of collective bargaining with respect to the Plan as provided in ERISA §§ 4003(f)(1), 29 U.S.C. §§ 4003(f)(1).  AFA brings this action on its own behalf and on behalf of the Plan participants whom it represents.

ANSWER:  PBGC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4.

5.      Defendant PBGC is a corporation established within the United States Department of Labor pursuant to ERISA § 4002, 29 U.S.C. § 1302, which has powers to terminate pension plans, pursuant to the requirements specified in ERISA.

ANSWER:  PBGC admits that PBGC is a public corporation and an agency of the United States government, and respectfully refers the Court to Title IV of ERISA for its powers.

6.      The Plan is a pension plan as defined in ERISA §3(2), 29 U.S.C. § 1002(2), which provides retirement benefits to 28,402 Plan participants:  15,254 active employees; 7,949 deferred employees; and 5,199 retirees.

ANSWER:  PBGC admits the Plan meets the definition of a pension plan under 29 U.S.C. § 1002(2).  Upon information and belief, PBGC admits that as of January 1, 2004, the Plan covered 28,616 participants:  20,396 active employees (which includes 5,374 participants on voluntary leave status on August 31, 2003); 3,168 deferred employees; and 5,052 retirees.

7.      United has been operating as a debtor-in-possession under Chapter 11 of the bankruptcy code, 11 U.S.C. § 101, et seq., since December 9, 2002.

ANSWER:  Admitted.

8.      Title IV of ERISA provides the exclusive means for terminating single-employer pension plans.  In order to effect a voluntary distress termination under Section 4041 of ERISA, the termination must not violate the terms of any existing collective bargaining agreement ("CBA").  This requirement is commonly referred to as the "contract bar".

ANSWER: PBGC admits the allegations of paragraph 8 to the extent consistent with 29 U.S.C. §1341, and asserts the statute speaks for itself.

9. On November 25, 2005, United moved the bankruptcy court for authority to reject its CBAs, pursuant to Section 1113(c) of the Bankruptcy Code, 11 U.S.C. § 1113(c). Specifically, United sought authority "to eliminate any provisions of [its] CBAs that would prohibit a distress termination of the Company's [four] pension plans." United sought an order to allow it to remove ERISA's contract bar and effect a voluntary discharge termination.

ANSWER: PBGC admits that United filed the motion referred to in the paragraph on November 25, 2004. To the extent the remaining allegations characterize that filing, it shall speak for itself.

10. In order to reject a CBA under the bankruptcy code an employer must follow the strict requirements of 11 U.S.C. § 1113, including demonstrating to the court that the proposed modifications to the CBA are necessary to permit a successful reorganization. Moreover, the bankruptcy court's decision on that standard is subject to appeal.

ANSWER: PBGC refers the court to the 11 U.S.C. § 1113 for its contents and denies the allegations of paragraph 10 to the extent inconsistent therewith.

11. While the 1113 process was proceeding in the bankruptcy court, PBGC maintained repeatedly that the Plan should be maintained in any successful reorganization effort.

ANSWER: PBGC admits that it filed certain papers in the bankruptcy proceeding maintaining that the Plan was affordable, but otherwise denies the allegations in paragraph 11.

12. On January 21, 2005, the bankruptcy court issued a scheduling order in which it set May 10 for the pre-trial hearing should United file a motion to reject its CBAs under Section 1113 and for a distress termination under Section 4041 of ERISA. On May 11, the court scheduled the evidentiary hearing on this motion to begin.

ANSWER: Admitted.

13. In a letter dated April 4, 2005, the Executive Director of PBGC characterized AFA's proposals as "constructive" and reiterated the agency's position "that the AFA plan can and should be maintained by the company upon emergence from

Chapter 11." He added: "Based upon available information, we continue to believe that the interests of participants and the pension insurance program would be best served by the continuance of the AFA plan."

ANSWER: PBGC admits a letter from PBGC's Executive Director dated April 4, 2005, contains the quoted language, but denies the allegations correctly characterize the letter. PBGC respectfully refers the Court to the entire letter for its meaning and content.

14. On April 11, 2005, United filed a motion under Section 1113 of the bankruptcy code and Section 4041 of ERISA to terminate the Plan.

ANSWER: Admitted.

15. On April 14, United filed a distress termination notice with the PBGC and issued the notice, as required by law, to the participants of the Plan. 29 U.S.C. §§ 1341(b)(2)(A) & 1341(b)(2)(B).

ANSWER: Upon information and belief PBGC admits that by letter dated April 29, 2005, United filed a distress termination notice with PBGC. Upon information and belief PBGC admits that by letter dated April 12, 2005 United issued a notice of intent to terminate to participants of the Plan. Any allegations not specifically admitted are otherwise denied.

16. On April 14, PBGC filed an emergency motion to postpone consideration of United's motion for distress terminations of its defined benefit plans, calling United's motion "premature" and arguing that the Company had failed to show that the plans could not be maintained. PBGC explain that, until United "provide[s] an updated business plan ... and file[s] its plan of reorganization... PBGC cannot even determine its position on whether United can afford to maintain the Pension Plan coming out of bankruptcy."

ANSWER: PBGC admits the allegations stated in paragraph 16 to the extent consistent with the document referenced, and refers the Court to the document for its contents. Unless specifically admitted otherwise, PBGC denies the remaining allegations of paragraph 16.

17. On April 22, United announced that it had reached a settlement agreement with PBGC (the "settlement agreement"), which would result in the termination of all four of United's defined benefit plans.

ANSWER: PBGC admits United announced it had reached a settlement agreement with PBGC on April 22, 2005. PBGC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17 and therefore denies them.

18. Pursuant to the settlement agreement, United is to provide three tranches of securities with a total value of $1.5 billion, ($500 million of which is contingent on certain conditions subsequent), to PBGC in exchange for PBGC terminating the four pension plans, including the Flight Attendant Plan.

ANSWER: PBGC denies that Plaintiffs have accurately characterized the settlement agreement, and respectfully refers the Court to the agreement for a statement of its contents.

19. Under the terms of the Agreement, PBGC will initiate termination of the Plan pursuant to the involuntary termination provision of ERISA § 4042. Because an involuntary termination is initiated by PBGC under that section, the requirements of Section 4041 – including removal of the contract bar and satisfaction of the distress termination criteria – do not apply.

ANSWER: PBGC denies that Plaintiffs have accurately characterized the settlement agreement and respectfully refers the Court to the agreement for a statement of its contents. PBGC admits that the contract bar and distress termination criteria are not relevant to a PBGC initiated termination pursuant to 29 U.S.C. § 1342. Unless specifically admitted otherwise, PBGC denies the remaining allegations of paragraph 19.

20. To proceed with an involuntary termination, PBGC must first make an independent cause determination under ERISA § 4042(a), before seeking either court enforcement or voluntary settlement with the plan administrator/employer.

ANSWER: Paragraph 20 asserts a legal conclusion to which no response is required. To the extent a response is required, PBGC refers the court to 29 U.S.C. § 1342(a) and denies any allegations inconsistent therewith.

21. PBGC did not make a cause determination pursuant to ERISA § 4042(a) prior to entering the settlement agreement with United.

ANSWER:  PBGC admits that it had not made a termination decision with respect to the Plan prior to entering into the agreement with United.

22.  Plan termination is an express, material condition of the settlement agreement, and PBGC forfeits any claim to the $1.5 billion under the settlement agreement if the Plan is not terminated.

ANSWER:  PBGC admits that the termination of all of United's pension plans pursuant to Title IV of ERISA is a condition subsequent in the settlement agreement. Unless specifically admitted otherwise, PBGC denies the remaining allegations of paragraph 22.

23.  On May 11, the bankruptcy court entered an order approving the settlement agreement.  In its order approving the settlement, the bankruptcy court recognized that "[a]ggrieved parties have their rights under Section 4003(f) of ERISA, 29 U.S.C. § 1303(f), to bring actions against PBGC to challenge the propriety of its actions under ERISA."

ANSWER:  PBGC denies that the allegations in paragraph 23 accurately state the order of the bankruptcy court, and respectfully refers the Court to the bankruptcy court's order for a statement of its contents.

24.  On June 23, PBGC announced in several major newspapers that it would terminate the Plan, effective June 30, 2005.  PBGC's decision to authorize termination of the Plan without satisfying the requirements of ERISA as outlined in this Amended Complaint, is arbitrary and capricious, and a violation of ERISA.

ANSWER:  PBGC admits the first sentence of paragraph 24.  PBGC denies the remaining allegations in paragraph 24.

1.  In violation of Section 4041, 29 U.S.C. §1341, PBGC is undertaking the involuntary termination of the Plan, when the termination was, in fact, initiated by United and not PBGC.  Since termination of the Flight Attendant Plan was initiated by United, PBGC cannot, under Section 4041, terminate the Plan since Section 4041's contract bar prohibits it from doing so.  By proceeding with an involuntary termination of the Plan, PBGC is violating Section 4041 of ERISA. 29 U.S.C. § 1341.

ANSWER:  Denied.

2.        By entering into a settlement agreement that effectively terminates the Plan by settlement without having first made a cause determination under ERISA § 4042(a), PBGC has violated ERISA § 4042. 29 U.S.C. § 1342.

ANSWER: Denied.

3.        PBGC's decision to terminate the plan with an effective date of June 30, 2005 was arbitrary and capricious, in further violation of ERISA § 4042, 29 U.S.C. § 1342.

ANSWER: Denied.

4.        As a direct result of PBGC's actions, AFA's membership stands to lose a significant portion of their retirement benefits in a PBGC take-over of the Plan. Moreover, AFA will suffer irreparable injury if an injunction does not issue because its fight attendants will make decisions regarding whether to continue their employment with United on the basis of the benefits available to them upon termination and replacement of the Plan, as opposed to the benefits available under their current Plan. It will not be possible to reverse the effects of these decision after a judgment on the merits.

ANSWER: PBGC denies each and every allegation in paragraph 4, except PBGC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding AFA's membership, and therefore denies those allegations.

5.        Termination of the Plan without satisfying the requirements of ERISA will harm the public interest in administration of ERISA and protection of retirement plans under the terms of that statute.

ANSWER: PBGC denies any allegation that in the instant case the termination of the Plan does not meet the requirements of ERISA.

FIRST AFFIRMATIVE DEFENSE

AFA's First Amended Complaint fails to state a claim for which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

AFA's claims seeking relitigation of issues involving the settlement agreement already litigated in United's bankruptcy proceeding and determined by bankruptcy court order entered May 11, 2005, are barred by the doctrine of issue preclusion.

THIRD AFFIRMATIVE DEFENSE

AFA's request for an injunction to prevent PBGC from proceeding with termination of the Plan is moot as the Plan was terminated and trusteed as of June 30, 2005.

WHEREFORE, PBGC respectfully requests that this Court issue an order:

A. providing that the AFA is not entitled to an injunction preventing PBGC from terminating the plan;

B. providing that the AFA is not entitled to the restoration of the Plan pursuant to 29 U.S.C. § 1347;

C. dismissing the First Amended Complaint in its entirety; and

D. awarding PBGC such other relief as is just and proper.

Dated: July 19, 2005
Washington, D.C.

Respectfully submitted,

Andrea M. Wong
JEFFREY B. COHEN, DC Bar #347880
Chief Counsel
CHARLES L. FINKE
Associate Chief Counsel
PAULA CONNELLY, DC Bar #389055
JOHN A. MENKE, DC Bar #370540
Assistant Chief Counsels
SHANNON L. NOVEY, DC Bar #476277
ANDREA M. WONG, DC Bar #449128
JACQUELYN M. GRAY
Attorneys
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, N.W.
Washington, DC 20005
wong.andrea@pbgc.gov
efile@pbgc.gov
(202) 326-4020, ext. 3448 (telephone)
(202) 326-4112 (facsimile)

Attorneys for Pension Benefit Guaranty Corp.