IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                     )
ASSOCIATION OF FLIGHT                )
ATTENDANTS-CWA, AFL-CIO,             )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )  Civil Action No. 1:05CV01036
                                     )
PENSION BENEFIT GUARANTY             )
CORPORATION,                         )
                                     )
          Defendant.                 )
_____)
```

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Association of Flight Attendants-CWA, AFL-CIO ("AFA"), moves this Court for an order compelling Defendant Pension Benefit Guaranty Corporation ("PBGC" or "Agency") to produce certain discovery. The information sought falls into three categories: (1) materials relating to the settlement agreement between PBGC and United Airlines; (2) PBGC's analysis of the viability of the Flight Attendant Plan; and (3) materials relating to PBGC's policies and practices regarding plan termination.

Plaintiff's proposed document requests are submitted as Attachment A hereto, and proposed interrogatories submitted as Attachment B. AFA also seeks to take the depositions of John Spencer, Bradley Belt, and Michael Kramer regarding the settlement agreement, and the deposition of a representative of Greenhill & Co. LLP regarding the company's technical analysis of pension liabilities relied upon by PBGC in making its termination decision.

In addition, AFA seeks a Rule 30(b)(6) deponent from United for testimony limited to United's representation on April 29, 2005 that PBGC would terminate the Flight Attendant Plan within ten to fourteen days of court approval of the settlement agreement.

Defendant Agency has submitted an administrative record to the Court. The Agency asserts that this Court's review is limited to that record, and therefore no additional discovery is permitted. This position is incorrect. The record submitted by the Agency is inadequate and AFA is entitled to discover information supplemental to the record identified by the Agency.

As recognized by the Court during the preliminary injunction proceedings, this case is not simply a challenge to PBGC's decision to terminate the Flight Attendant Plan. Instead, AFA contends that the Agency acted ultra vires in proceeding with termination pursuant to the settlement agreement with United. PBGC acted ultra vires because it initiated plan termination at the behest of an employer despite the contract bar and committed to termination prior to making a determination under Section 4042. Thus, we challenge both how the Agency came to make its termination decision, as well as the decision itself. The record supplied by PBGC does not reflect the full scope of AFA's claims, and therefore must be expanded through discovery. Additionally, AFA has good reason to believe that there are materials that informed the Agency's termination decision, which were not included in the record presented to the Court. Other factors also warrant discovery, such as PBGC's bad faith in asserting previously that

-2-

the settlement agreement would not dictate the outcome of the termination process, when, in fact, it has.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

By letter dated June 16, 2005, AFA requested that counsel for PBGC hold the conference required under Federal Rule of Civil Procedure 26 and Local Rule 16.3. PBGC responded that such a meeting would be premature, as the Agency intended to file a motion to dismiss. On June 23, 2005, AFA wrote a second letter explaining that PBGC's refusal to meet was unjustified.

Also on June 23, PBGC announced its decision to terminate the Flight Attendant Plan effective June 30, 2005. PBGC made the announcement through public notice in major newspapers. In response, on June 30, AFA amended its complaint to add a challenge to the termination determination and to request additional relief in the form of plan restoration. At this point, PBGC indicated that it would no longer move to dismiss in light of the amended complaint and agreed to hold the required discovery and scheduling conference.

The parties held the conference on July 12, 2005. At that conference, PBGC took the position that AFA was not entitled to any discovery beyond the administrative record because such discovery was only available upon a showing of agency bad faith. PBGC further indicated that its administrative record was not yet available, but committed to providing the record to AFA by July 22, which was done.

The administrative record provided by PBGC indicates three reasons for termination of the Flight Attendant Plan. First, the Agency asserts that guaranteed benefits under the Plan accrue at a rate of $3.31 million per month, giving rise to a long-term loss to the corporation under Section 4042(a)(4). Admin. Rec., Vol. 1, at 7, 19. This monthly rate of growth was previously identified by the Agency back on March 9, 2005. Admin. Rec., Vol. 10, at 3602 (filed under seal). In addition, because United intended to terminate the Plan under Section 4041 on the same date chosen by PBGC, there was no risk of mounting losses for PBGC beyond June 30, even if the Agency had not chosen to terminate.[1] Admin. Rec., Vol. 1, at 75 (United's Notice of Intent to Terminate).

The second reason advanced in the administrative record relates to the Agency's settlement agreement with United. As the Agency states:

> A significant increase to PBGC's long-run loss is present if Plan termination is delayed because such a delay places PBGC's Agreement at risk. The Agreement depends on PBGC taking over all four of United's underfunded Plans, including the FA Plan. Delay in termination of the FA Plan puts the Agreement at risk, and Greenhill has concluded that PBGC's recovery is substantially greater with the Agreement than without the Agreement - an estimated 137% better recovery (equaling approximately $123,000,000). Additionally, delayed termination of the FA Plan might obstruct United's ability to obtain exit financing and to maintain exclusivity for filing a plan of reorganization ("POR"). PBGC likely would lose its recovery pursuant to the Agreement if a POR by an entity other than United is confirmed.

---

[1]    As explained by counsel, the June 30 date would apply retroactively, no matter when United recommenced Section 4041 proceedings. Hearing Tr., dated 6/3/05, at 11.

Admin. Rec., Vol. 1, at 7; see also id., at 19.   Thus, the settlement agreement itself provided grounds for the Agency to terminate the Flight Attendant Plan.

Lastly, the Agency asserts in the administrative record that the Plan should terminate under 4042(a)(2) because it will be unable to pay benefits when due "with assets equal to only 42% of benefit liabilities."  Admin. Rec., Vol. 1, at 7; see also id., at 20.  The Agency was aware that Plan assets were only equal to 42% of benefit liabilities at the time it entered the settlement agreement with United.   Parcelli Decl., filed 5/31/05, Ex. B.

The administrative record does not contain any materials relating to negotiation of the settlement agreement or PBGC's decision to enter into the agreement and carry out its terms.  The record is also devoid of any internal directives or other manuals that may have guided the Agency's termination process.

**ARGUMENT**

**I.   WELL-SETTLED PRECEDENT PERMITS DISCOVERY IN ORDER TO COMPLETE THE ADMINISTRATIVE RECORD, AND PERMITS DISCOVERY BEYOND THE ADMINISTRATIVE RECORD IN A VARIETY OF CIRCUMSTANCES.**

In a challenge to administrative action, "inquiry into the facts is to be searching and careful."   Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).   Evaluation of an agency's conduct cannot be based upon "'post hoc' rationalizations" created solely in the litigation context.   Id. at 419. Generally, agency action is judged on the basis of the "'whole record' compiled by the agency" id., but in some circumstances evidence beyond the complete agency record may be considered.

"The administrative record includes all materials 'compiled' by the agency . . . that were before the agency at the time the decision was made." <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1095 (D.C. Cir. 1996). Stated another way, "a complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." <u>Amfac Resorts, L.L.C. v. Dep't of the Interior</u>, 143 F. Supp. 2d 7, 12 (D.D.C. 2001); <u>see also</u> <u>Bar MK Ranches v. Yuetter</u>, 994 F.2d 735, 739 (10th Cir. 1993) ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency."). Where the administrative record as produced by the agency is not complete, plaintiff is entitled to discover materials that are properly part of the administrative record. <u>Esch v. Yeutter</u>, 876 F.2d 976, 991 (D.C. Cir. 1989).[2/]

Additional discovery beyond the complete record is also permitted in a variety of circumstances. Extra-record evidence may be obtained through discovery:

"when agency action is not adequately explained in the record before the court," <u>Esch</u>, 876 F.2d at 991;

when discovery provides "the only possibility for effective judicial review and when there have been no contemporaneous administrative findings" <u>Cmty. for Creative Non-Violence v. Lujan</u>, 908 F.2d 992, 997 (D.C. Cir. 1990);

---

[2/]    At a bare minimum, plaintiff is entitled to discovery necessary to determine whether or not the record as presented by the agency is complete. <u>Natural Res. Def. Council, Inc. v. Train</u>, 519 F.2d 287 (D.C. Cir. 1975); <u>PBGC v. LTV Steel Corp.</u>, 119 F.R.D. 339, 341 (S.D.N.Y. 1988).

when there is a showing of "bad faith or improper behavior" by the agency, <u>Id.</u>; <u>see also</u> <u>PBGC v. LTV Steel Corp.</u>, 119 F.R.D. 339, 343-44 (S.D.N.Y. 1988);

"when a case is so complex that a court needs more evidence to enable it to understand the issues clearly," <u>Esch</u>, 876 F.2d at 991;

when "discovery is necessary to permit explanation or clarification of technical terms or subject matter involved in the agency action under review," <u>Pub. Power Council v. Johnson</u>, 674 F.2d 791, 794 (9th Cir. 1982).

Given the incomplete state of the record produced by PBGC and the existence of other factors permitting extra-record discovery, including bad faith and improper conduct, AFA should be permitted to obtain the discovery outlined below.

## II. AFA IS ENTITLED TO DISCOVERY REGARDING THREE DIFFERENT CATEGORIES OF INFORMATION.

As originally set forth in the Rule 26(f) report, AFA seeks discovery concerning three categories of information: (1) information regarding the negotiations between PBGC and United over the settlement agreement and information regarding PBGC's conduct pursuant to the agreement; (2) information regarding PBGC's knowledge and analysis of the viability of the Flight Attendant Plan; and (3) PBGC's policies and past practices regarding plan termination. Under the well-settled legal principals set forth above, AFA is entitled to the discovery sought. AFA's specific document requests and interrogatories are attached as Attachments A and B hereto.

A.  **AFA Is Entitled To Discovery Regarding The Settlement Agreement, Which PBGC Relied Upon In Deciding To Terminate The Flight Attendant Plan.**

AFA is entitled to the administrative record related to the settlement agreement between PBGC and United, and to extra-record discovery through depositions of John Spencer, Bradley Belt, and Michael Kramer, who were involved in both the settlement agreement and the termination decision. It is clear from the record designated by PBGC that the settlement agreement and the agency's termination decision were directly related. For that reason, materials relating to entry into the settlement agreement are properly part of administrative record of the termination decision.

First, AFA is entitled to the written administrative record of the settlement process under Section 4067. PBGC asserted (and this Court found at the preliminary injunction stage) that the Agency entered the agreement pursuant to its authority under Section 4067 of ERISA, 29 U.S.C. § 1367. As PBGC's regulations make clear, Section 4067 is a formal process, requiring the Agency to make certain factual determinations. Under the Agency's regulations, "PBGC will defer payment, or agree to other arrangements for the satisfaction, of any portion of liability to the PBGC only when":

(1)  "such action is necessary to avoid the imposition of a severe hardship and [] there is a reasonable possibility that the terms so prescribed will be met and the entire liability paid"; or

(2)  "PBGC determines that section 4062(b) liability exceeds 30 percent of the collective net worth of persons subject to liability in connection with plan termination."

29 C.F.R. §§ 4062.8 & 4067.1[3/] (emphasis added).  For each of the two scenarios where PBGC is permitted to make arrangements, certain procedures must be followed and the Agency must make certain findings.  Id.  AFA is entitled the record of PBGC's findings under its Section 4067 regulations.

To the extent that PBGC and United exchanged materials related to the settlement in addition to the documents encompassing the formal Section 4067 record, AFA is entitled to those materials as well.  It is clear from the limited record produced thus far that the settlement agreement was key to the Agency's ultimate decision to terminate.  It is also known that several of the same people involved in the settlement agreement were involved in the termination decision.  Specifically, John Spencer, Director of Insurance Supervision and Compliance ("DISC"), was PBGC's chief negotiator for the settlement agreement and also signatory to the staff recommendation to terminate.  2d Parcelli Decl., filed this same date, Ex. A at 2; Admin. Rec., Vol. 1, at 25.  Executive Director Bradley Belt was the final decision-maker both for the settlement and the termination.  Hearing Tr., dated 6/3/05, at 31; Admin. Rec., Vol. 1, at 1.  In addition, Michael Kramer of the Greenhill firm provided financial analysis for both transactions. 2d Parcelli Decl., Ex. A at 2; Admin. Rec., Vol. 1, at 30.

---

[3/]    Section 4067.1 of PBGC's regulations incorporates by reference the Agency's regulations under Section 4042, stating: "Cross-reference.  Section 4062.8 of this chapter contains rules on deferred payment and other arrangements for satisfaction of liability to the PBGC after termination of single-employer plans." 29 C.F.R. § 4067.1.

Second, given the intersection between the settlement agreement and the termination decision, materials pertaining to the agreement are properly considered part of the administrative record of the termination decision. See Amfac Resorts, L.L.C. v. Dep't of the Interior, 143 F. Supp. 2d at 12 (administrative record includes materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision"); Bar MK Ranches v. Yuetter, 994 F.2d at 739 ("complete administrative record consists of all documents and materials directly or indirectly considered by the agency"). Other than the settlement agreement, each of the factors relied upon in terminating the Plan were known to the Agency well before the agreement was signed. As a basis for termination, the agreement is therefore unique and stands as the linchpin of the decision to end the Plan.[4/]

Third, there is also an element of bad faith and impropriety present that further supports AFA's demand for discovery regarding the settlement agreement. See PBGC v. LTV Steel Corp., 119 F.R.D. at 343-44. Before this Court at the preliminary injunction stage, PBGC represented that the "settlement does not itself terminate the plan." PBGC Br., filed 5/27/05, at 13. Counsel for PBGC also stated: "the agreement itself, first, it only commits [the Agency]

---

[4/]    To the extent that pertinent information necessary to explain the Agency's action with regard to the settlement agreement is not in documentary form, AFA is entitled to take depositions to fill in any gaps in the documentary record. See Esch, 876 F.2d at 991 (extra-record discovery permitted "when agency action is not adequately explained in the record before the court").

to initiate a process.  It doesn't commit us to a conclusion." Hearing Tr., June 3, 2005, at 28.  The plain implication of these statements was that the settlement agreement did not control the result of the Agency's analysis under Section 4042.

As it now turns out, the settlement agreement did dictate plan termination under Section 4042.  According to PBGC, if the Agency failed to terminate, it would not be assured of reaping the benefits of its settlement agreement, thus increasing the Agency's long-run loss with respect to the Plan.  Admin. Rec., Vol. 1, at 7. In other words, the settlement itself provided the Agency with statutory grounds to terminate, and thus controlled the result of the Agency's analysis under Section 4042.

This outcome must have been apparent to the Agency all along. In fact, the Agency's press release announcing the settlement agreement states: "The PBGC and its financial advisors believe the settlement is superior to the recovery the agency would have received as an unsecured creditor in bankruptcy."  Parcelli Decl., filed 5/31/05, Ex. B.  Thus, PBGC's repeated assertions that the settlement agreement did not dictate a particular result were disingenuous, at best.

PBGC's reliance on the settlement agreement in deciding to terminate also improperly tied the fate of the Flight Attendant Plan to United's other plans.  PBGC has asserted repeatedly in the federal courts that termination determinations must be made solely on an individual-plan basis, not by aggregating pension plans.  For example, in the Kaiser Aluminum bankruptcy, PBGC maintained that a

court could not aggregate plans for the purpose of ruling on a distress termination motion.[5/] <u>PBGC v. Kaiser Aluminum Corp.</u>, 2005 WL 735551 (D. Del. Mar. 30, 2005). Although PBGC lost that case, it "has appealed and believes it will ultimately prevail." PBGC Br., filed 5/27/05, at 16 n.64. Thus, PBGC's conduct is improper by its own standards, because it evaluated termination of the Flight Attendant Plan in terms of the settlement relating to all of United's plans. Such impropriety too gives rise to extra-record discovery through deposition. Accordingly, AFA is entitled to take the depositions of John Spencer, Bradley Belt, and Michael Kramer, who were involved in both the settlement agreement and the decision to terminate. In addition, AFA should be permitted to depose a Rule 30(b)(6) witness from United. This deposition would be limited to ascertaining United's source for its statement on April 29, 2005 that the Flight Attendant Plan would be terminated ten to fourteen days from court approval of the settlement agreement. Babcock Decl., filed 5/19/05, Ex. M at Slide 8.

Fourth, an analysis of the settlement agreement with United performed by the Greenhill firm and dated May 12, 2005 figured prominently in the Agency's rationale for termination. <u>See</u> Admin. Rec., Vol. 1, at 7, 19, 32. That analysis attempts to quantify the benefits to PBGC under its global settlement, and attribute a certain amount of those benefits to the termination of the Flight

---

[5/]    PBGC also consistently maintained throughout the United Airlines bankruptcy that termination decisions require a plan-by-plan approach, reiterating its position in a bankruptcy filing dated April 29, 2005. 2d Parcelli Decl., Ex. B.

Attendant Plan. Id., at 135-50. The analysis is highly technical. The basis for the assumptions contained in the analysis and the methodologies used are not apparent on the face of the document. Under such circumstances, deposition testimony regarding Greenhill's analysis is appropriate and permissible. See Pub. Power Council v. Johnson, 674 F.2d at 794 ("discovery is necessary to permit explanation or clarification of technical terms or subject matter involved in the agency action under review").

   **B.    AFA Is Entitled To The Complete Record Regarding PBGC's Analysis Of The Viability Of The Flight Attendant Plan.**

   As stated in the administrative record, Greenhill has provided financial analysis to PBGC throughout the United bankruptcy, in particular analysis of the affordability of United's pension plans.

> Throughout this case DISC has been assisted by Greenhill & Co., LLC ("Greenhill"), a well known investment banking firm. Greenhill has provided DISC with financial expertise and analysis on United's forecasts, capital structure, etc., and prepared financial models to determine whether United can afford one or more of its pension plans.

Admin. Rec., Vol. 1, at 14. The current administrative record also shows that PBGC relied on Greenhill's analysis dated May 18, 2005 in making its termination decision. Id. at 7, 15, 32. The May 18 analysis concluded that United could not afford to retain any of its pension plans, including the Flight Attendant Plan. Id., at 129-34.

   Given Greenhill's on-going role in assessing the affordability of United's pension plans on behalf of PBGC, more than just the May 18 memo should be part of a complete administrative record. In fact, it can be reasonably inferred from the current administrative

-13-

record that Agency staff and decision-makers continued to receive reports from Greenhill throughout the months prior to termination of the Flight Attendant Plan. Id., at 14. Insofar as the Agency directly or indirectly considered those reports in making the termination decision, they are properly part of the administrative record.

Greenhill's May 18 analysis and PBGC's reliance on it also evidence bad faith. On April 14, 2005 (less than ten days prior to the settlement agreement), PBGC moved in the bankruptcy court to postpone proceedings on United's motion for Section 4041 termination. The central premise of PBGC's motion was that the Agency could not determine the affordability of United's pension plans until the Company provided a revised business plan. PBGC wrote:

> The parties agreed to the schedule for this distress termination proceeding in December, 2004. At that time, the parties contemplated that United would have provided an updated business plan according to its schedule and filed its plan of reorganization prior to seeking the distress termination of their Plans. These circumstances have changed. The timing for the distress hearing must also change. Otherwise it will be impossible for this Court to follow the law and determine whether United can afford to maintain any of the Pension Plans after it emerges from bankruptcy on the basis of a plan of reorganization and the financial outlook of United.

Babcock Decl., filed 5/19/05, Ex. D. at 5. The Agency further asserted:

> For instance, vital decisions regarding fleet planning, negotiations with the public debt group, and contracting with United's regional partners remain to be resolved. Until the Debtors can provide final answers to these critical issues and their impact on United's financial projections, PBGC cannot even determine its position on whether United can afford to maintain the Pension Plans

-14-

<u>coming out of bankruptcy, and it will be impossible for this Court to decide what the restructured United can or cannot afford.</u>

<u>Id.</u>, 5-6 (emphasis added).

United did not issue a new business plan by May 18, 2005, and has not done so to date.  2d Parcelli Decl., ¶ 2.  Nor were the specific issues of fleet planning, public debt, and contracting resolved as of May 18.  <u>Id.</u>  Nevertheless, on May 18, Greenhill concluded that a reorganized United could not afford any of its pension plans.  PBGC then relied upon that determination in deciding to terminate the Flight Attendant Plan.  There is ample evidence that PBGC acted in bad faith in relying on an analysis that lacked information previously identified as absolutely vital to determining affordability.  For this reason, AFA should be permitted to depose John Spencer, Bradley Belt, and Michael Kramer, regarding the Agency's analysis of the viability of the Flight Attendant Plan.

**C.  PBGC's Policies And Practices Relating To Plan Termination Are Discoverable.**

AFA is permitted to obtain through discovery a variety of materials relating to PBGC's policies and practices.  Such information is available for two reasons: (1) PBGC should have included such information in its administrative record; and/or (2) materials relating to the Agency's construction of its regulations

-15-

is discoverable.[6/]  See  Tenneco Oil Co. v. Dep't of Energy, 475 F. Supp. 299, 317-18 (D. Del. 1979).

From the record of the preliminary injunction hearing, it is clear that PBGC has internal directives.[7/]  Yet, PBGC did not include within its administrative record any policy directives or manuals.  "It strains the [] imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals."  Tenneco Oil Co. v. Dep't of Energy, 475 F. Supp. at 317.  Because such materials inform the decisions of agency officials, they are properly included in the administrative record.  Accordingly, PBGC should produce any policy materials and guidelines relating to ERISA Sections 4041, 4042, and 4067.

AFA is also entitled to discovery relating to the Agency's past practice under Section 4067, 29 U.S.C. § 1367.  When PBGC asserted that it entered the settlement agreement pursuant to its authority under Section 4067, AFA argued that ERISA only permitted the agency to "make arrangements"  after reaching a termination decision.  In reply, the Agency invoked the "may become liable" language in Section 4067 and represented to the Court that the

---

[6/]    AFA could obtain most, if not all, of the information sought regarding PBGC's policies and practices through a Freedom of Information Act ("FOIA") request.  AFA believes, however, that some of its information requests could be answered more easily in the form of interrogatories, whereas FOIA requests are limited to document requests.

[7/]    The Agency submitted its internal directive relating to Section 4042 termination procedures to the Court in opposition to AFA's motion for preliminary injunction.  See Bacon Decl., filed 5/27/05, Ex. D.

Agency often reached settlement agreements prior to making a Section 4042 determination. Hearing Tr., dated 6/3/05, at 23-24. AFA is entitled to discovery regarding the pre-termination settlements relied upon by PBGC in order to understand the Agency's current construction of its own regulations. This discovery is all the more appropriate given that this position is inconsistent with the previously stated position of the PBGC. See Op. Letter 77-158, 1977 WL 5290 (PBGC Aug. 15, 1977) (under Section 4067 "[e]mployer liability payment terms are arranged on a case-by-case basis after liability is determined under Section 4062"); Op. Letter 77-131, 1977 WL 5269 (PBGC Feb. 11, 1977)(same); Op. Letter 76-78, 1976 WL 4938 (PBGC June 11, 1976)(same).

AFA should also be able to obtain discovery related to the Agency's past practice under Section 4042. Specifically, AFA is entitled to know how often termination has resulted after PBGC's staff initiates the Section 4042 process. At the preliminary injunction stage, PBGC argued that the agreement only required that staff initiate the termination process and that the Agency's termination review process is not merely a "rubber stamp." PBGC Br. at 13 n.53. Given this representation, AFA is entitled to the information necessary to assess its accuracy.

<u>**CONCLUSION**</u>

For all the foregoing reason, AFA respectfully requests that its motion to compel be granted and that PBGC provide the following discovery.

-17-

Respectfully submitted,

/s/ Robert S. Clayman
Robert S. Clayman, D.C. Bar No. 419631
Carmen R. Parcelli, D.C. Bar. No. 484459
GUERRIERI, EDMOND, CLAYMAN & BARTOS P.C.
1625 Massachusetts Avenue, N.W., Ste. 700
Washington, DC 20036
(202) 624-7400

Counsel for Association of Flight
Dated: July 29, 2005     Attendants-CWA, AFL-CIO

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 29, 2005, I electronically filed Plaintiff's Motion to Compel Discovery and the Second Declaration of Carmen R. Parcelli with an attached Exhibits using the CM/ECF system.  I further certify that on July 29, 2005, a true and correct copy of the same was served by electronic mail on:

       Jeffrey B. Cohen
       Chief Counsel
       Pension Benefit Guaranty
         Corporation
       1200 K Street, N.W.
       Washington, D.C.  20005
       cohen.jeffrey@pbgc.gov

       Attorney for defendant PBGC


                /s/ Carmen R. Parcelli

                Carmen R. Parcelli

# ATTACHMENT  A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                   )
ASSOCIATION OF FLIGHT              )
ATTENDANTS-CWA, AFL-CIO,           )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   Civil Action No. 1:05CV01036
                                   )
PENSION BENEFIT GUARANTY           )
CORPORATION,                       )
                                   )
          Defendant.               )
_____)
```

## PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 34, Defendant Pension Benefit Guaranty Corporation ("PBGC") is hereby requested to make available to counsel for Plaintiff for inspection and copying the following documents which are within your possession, custody or control, wherever located, within thirty (30) days of the service upon you of this document request, at the offices of Guerrieri, Edmond, Clayman & Bartos, P.C., 1625 Massachusetts Avenue, N.W., Suite 700, Washington, DC 20036, or such other place as may be mutually agreed upon by the parties.

### INSTRUCTIONS

1.    If any document request cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

2.    Each request for a document contemplates production of the document in its entirety, without abbreviation or expurgation.

3.    If it is claimed that the attorney-client privilege, the work product doctrine, or any other privilege is applicable to any

document sought by this request, the document is to be identified as follows:

(a)  State the date, nature and subject matter of the document;

(b)  Identify each and every author of the document;

(c)  Identify each and every preparer of the document;

(d)  Identify each and every person who received the document;

(e)  Identify each and every person from whom the document was received;

(f)  State the present location of the document and all copies thereof;

(g)  Identify each and every person who has or ever had possession, custody, or control of the document or any copy thereof;

(h)  State the number of pages, attachments, appendices, and exhibits; and

(i)  Provide all further information concerning the document and the circumstances upon which the claim of privilege is asserted.

## DOCUMENT REQUESTS

1.  The administrative record relating to the settlement agreement entered between PBGC and United Airlines on or about April 22, 2005, including but not limited to PBGC's findings under Section 4067, 29 U.S.C. § 1367, as required under 29 C.F.R. § 4062.8.

2.  All documents provided by Greenhill to PBGC and directly or indirectly considered by PBGC in making its determination to terminate the Flight Attendant Plan.

3.  All internal memoranda, guidelines, directives, manuals or similar documents produced by PBGC relating to ERISA Sections 4041, 4042, and 4067.

4.  Provide copies of each settlement agreement identified in response to Plaintiff's Interrogatory No. 1, served upon you this same date.

5.  Provide copies of the final agency decision in each case identified in response to Plaintiff's Interrogatory No. 2, served upon you this same date.

Respectfully submitted,


_____
Robert S. Clayman
D.C. Bar No. 419631
Carmen R. Parcelli
D.C. Bar. No. 484459
GUERRIERI, EDMOND, CLAYMAN
& BARTOS P.C.
1625 Massachusetts Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 624-7400

Dated: July 29, 2005    Counsel for Association of Flight
Attendants-Communications Workers of
America, AFL-CIO

# ATTACHMENT  B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                       )
ASSOCIATION OF FLIGHT                  )
ATTENDANTS-CWA, AFL-CIO,               )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )  Civil Action No. 1:05CV01036
                                       )
PENSION BENEFIT GUARANTY               )
CORPORATION,                           )
                                       )
          Defendant.                   )
_____)
```

**PLAINTIFF'S INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Pension Benefit Guaranty Corporation ("PBGC") is hereby requested to provide written answers to the following interrogatories within thirty (30) days of the service upon you of these interrogatories at the offices of Guerrieri, Edmond, Clayman & Bartos, P.C., 1625 Massachusetts Ave., N.W., Washington, DC 20036.

**INTERROGATORIES**

1.    Identify each and every settlement agreement under ERISA Section 4067 entered into by the PBGC prior to PBGC making a decision  to terminate under ERISA Section 4042.


2.    Identify each and every case from January 1, 1999 to the present, in which PBGC staff have initiated the termination process under ERISA Section 4042, but a decision to terminate has not resulted from the process.

Respectfully submitted,


_____
Robert S. Clayman
D.C. Bar No. 419631
Carmen R. Parcelli
D.C. Bar. No. 484459
GUERRIERI, EDMOND, CLAYMAN
& BARTOS P.C.
1625 Massachusetts Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 624-7400

Dated: July 29, 2005    Counsel for Association of Flight
Attendants-Communications Workers of
America, AFL-CIO