**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ASSOCIATION OF FLIGHT ATTENDANTS – CWA, AFL-CIO,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No.:  1:05CV01036 (ESH)** |
| **v.** | ) ) ) | |
| **PENSION BENEFIT GUARANTY CORPORATION,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

**MEMORANDUM IN OPPOSITION TO
AFA'S MOTION TO COMPEL DISCOVERY**

This case involves a challenge by the Association of Flight Attendants ("AFA") to

Pension Benefit Guaranty Corporation's ("PBGC's") determination that the United Airlines

Flight Attendant Defined Benefit Pension Plan ("FA Plan" or "Plan") should be terminated.  It is

well established that, absent extraordinary circumstances not present here, judicial review of such

an administrative action is limited, and is restricted to the record that was before the agency at the

time it made its determination.[1]  Accordingly, no discovery is allowed, and AFA's motion should

be denied.

**BACKGROUND**

PBGC is the United States government agency that administers the mandatory pension

plan termination insurance program set forth in Title IV of ERISA.[2]  When a pension plan

covered by Title IV terminates without sufficient assets to pay all of its promised benefits, PBGC

typically becomes trustee of the plan and pays plan participants their pension benefits up to the

statutory limits.[3]

---

[1]  PBGC's 12-volume administrative record supporting its determination has been provided to the parties and filed with the Court.  Citations herein to the Administrative Record are to "AR."

[2]  *See* 29 U.S.C. §§ 1301-1461 (2000 & Supp. II 2002).

[3]  *See* 29 U.S.C. §§ 1321, 1322, and 1361.

Title IV of ERISA provides the exclusive means for terminating a pension plan.[4]  Under 29 U.S.C. § 1341, the plan sponsor can initiate termination of a pension plan.  In addition, PBGC may initiate termination of a pension plan under 29 U.S.C. § 1342 under certain circumstances, including when the a plan will be unable to pay benefits when due, or when the agency's long-run loss with respect to the plan may be expected to increase unreasonably if the plan is not terminated.[5]  Once PBGC has determined that a plan should be terminated under § 1342, it can either terminate the plan by agreement with the plan administrator – here, United Air Lines, Inc. ("UAL" or "United") – or apply to a federal district court for a decree adjudicating that the plan is terminated.[6]

In this case, PBGC exercised its statutory discretion under § 1342, as set forth in the administrative record.  On June 23, 2005, PBGC issued its Notice of Determination that: (i) the Plan must be terminated because it will be unable to pay benefits when due because of underfunding; (ii) PBGC's possible long-run loss with respect to the Plan may reasonably be expected to increase unreasonably if the Plan is not terminated; and (iii) the Plan must be terminated to avoid an unreasonable deterioration in its financial condition and any unreasonable increase in the liability of the insurance fund.[7]  On June 24, 2005, PBGC and United entered into a termination and trusteeship agreement, establishing June 30, 2005, as the Plan's termination date and appointing PBGC as its statutory trustee as of the date of Plan termination.[8]

AFA's complaint is largely based on the fact that before PBGC made its determination regarding the FA Plan, PBGC and United entered into a global settlement agreement

---

[4]  *See* 29 U.S.C. § 1341(a); *see also Hughes Aircraft Corp. v. Jacobson*, 525 U.S. 432, 446 (1999); *PBGC v. Mize Co., Inc.*, 987 F.2d 1059 (4th Cir. 1993).

[5]  *See* 29 U.S.C. § 1342(a)(2) and (4).

[6]  *See* 29 U.S.C. § 1342(c).

[7]  A copy of the Notice of Determination is attached hereto as Attachment 1.

[8]  *See* Attachment 2.

("Agreement") resolving the outstanding issues between them in United's bankruptcy case.  The bankruptcy court in that case approved the Agreement on May 11, 2005.[9]  The Agreement contemplated the termination of all United's pension plans, but did not require PBGC to terminate the FA Plan.[10]

AFA filed the instant action on May 20, 2005, seeking to enjoin PBGC from initiating the decision-making process to terminate the FA Plan.  This Court denied AFA's motion for preliminary injunction on June 8, 2005.  On June 30, 2005, AFA amended its complaint to seek to enjoin the termination of the FA Plan, or to seek to restore the Plan under 29 U.S.C. § 1347.  Under relevant case law, such an action is reviewed on the agency's administrative record under the arbitrary and capricious standard.[11]

## ARGUMENT

### AFA IS NOT ENTITLED TO DISCOVERY IN THIS CASE, WHICH INVOLVES THE COURT'S LIMITED REVIEW OF PBGC'S ADMINISTRATIVE DETERMINATION.

#### A.    The Administrative Record of PBGC's Termination Decision is Complete.

##### 1.    Materials relating to PBGC's entry into the PBGC/UAL Agreement are not part of the administrative record of the <u>termination decision, and should not be subject to discovery.</u>

AFA asserts that PBGC's administrative record of its decision to terminate the FA Plan is incomplete, and asks the Court to compel PBGC to produce additional materials.  Arguing that

---

[9]  *See* AR at 88.

[10]  As this Court found, "the Agreement's plain language does not compel the plan's termination, for it does not preordain a given conclusion."  Memorandum Opinion and Order (June 8, 2005) at 10.

[11]  "[I]n cases where Congress has simply provided for review, without setting forth the standards to be used . . . consideration is to be confined to the administrative record . . . no de novo proceeding may be held."  *U.S. v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).  *Accord Alaska Dept. Of Environmental Conservation v. EPA*, 540 U.S. 461, 496-96 (2004).

the settlement agreement between PBGC and UAL was "directly related" to the agency's
subsequent termination decision,"[12] AFA seeks:

> the administrative record relating to the settlement agreement between PBGC and
> United Airlines on or about April 22, 2005, including but not limited to PBGC's
> findings under Section 4067, 29 U.S.C. § 1367, as required under 29 C.F.R.
> § 4062.8.[13]

In addition, although AFA has not made any document request for such document, it argues in its
brief that it has a right to material relating to PBGC's *entry* into the Agreement.[14]  Any materials
that underlie PBGC's decision to enter the Agreement do not belong in the administrative record
of its decision to terminate the FA Plan, and should not be the subject of discovery in this suit,
which challenges the *termination*, and not the Agreement.

In fact, the Agreement itself was and continues to be the subject of vigorous litigation in
another forum.  A number of parties, including AFA, opposed approval of the Agreement in the
Bankruptcy Court for the Northern District of Illinois.  AFA then appealed the approval of the
agreement to the District Court for the Northern District of Illinois, and after that court affirmed
the bankruptcy court, AFA further appealed to the Seventh Circuit.[15]  That appeal is pending.

In the bankruptcy court, AFA asserted that "PBGC's determination to terminate the Flight
Attendant Plan is a condition subsequent of the Agreement" and "PBGC has plainly failed to
comply with the involuntary termination process mandated by ERISA, which requires that the
'PBGC initiate[] the termination process by 'issuing a notice . . . to a plan administrator [of
PBGC's] determin[ation] that the plan should be terminated.'"[16]  At oral argument in that court,

---

[12]  Motion to Compel at 8.

[13]  Plaintiff's Requests for Production of Documents, Attachment A to AFA's Motion to Compel,
at ¶ 1.

[14]  The Agreement itself is contained in the administrative record, *see* AR 93 to 108.

[15]  *Association of Flight Attendants-CWA, AFL-CIO v. United Air Lines, Inc.,* (7th Cir.) (notice of
appeal filed July 25, 2005).

[16]  Objection of Association of Flight Attendants-CWA, AFL-CIO, to Debtors' Emergency
Motion to Approve Agreement with PBGC (Bankr. N.D. Ill. May 6, 2005) (Attachment 3 hereto)

AFA similarly equated the Agreement with termination of the FA Plan: "If Mr. Beltz [PBGC Executive Director Bradley Belt] is a signatory to this agreement, this is a fait accompli, and the deal is done, and our plan will be terminated if this agreement is approved."[17]  The bankruptcy court rejected these arguments, and found that "[t]his settlement does not itself terminate the plan, any plan.  This settlement provides that the PBGC will go through its administrative procedures to come to a conclusion as to whether the plans in question here ought to be involuntarily terminated."[18]  The bankruptcy court concluded, "PBGC is agreeing under this agreement to exercise its statutory obligation to determine whether a pension plan ought to be involuntarily terminated."[19]

AFA appealed the bankruptcy court's approval of the Agreement, but the district court explicitly rejected its arguments, holding that "AFA's contention that PBGC would not initiate a involuntary termination in the absence of the Agreement is complete speculation on AFA's part and is not supported by the evidence."[20]  As noted, AFA has appealed the district court's decision to the Seventh Circuit.

In sum, AFA is pursuing its challenge of the PBGC/UAL Agreement in the appropriate forum, and cannot do so here as well.  Its challenge of PBGC's decision to terminate the FA Plan must be decided on the agency's administrative record of that determination, which includes the documents that were considered, directly or indirectly, by the agency in making that

---

at 14, 15.

[17]  Transcript of argument in Bankr. N.D. Ill. (May 10, 2005) (excerpts appended as Attachment 4 hereto) at 83.

[18]  *Id*. at 188.

[19]  *Id*. at 189.

[20]  Memorandum Opinion (N.D. Ill. July 21, 2005) (Attachment 5 hereto) at 4.  *See also id.* at 5 ("there is no evidence that the Agreement terminated any pension plan").

determination.    Documents underlying PBGC's negotiation of and entry into the PBGC/UAL

Agreement are "properly missing" from that record,[21] and should not be the subject of discovery.

For the same reason, AFA's request to depose several witnesses regarding the

Agreement (*see* Motion to compel at 8) should be denied.  The negotiations and deliberations

underlying the PBGC\UAL Agreement are not relevant to PBGC's termination decision.  To the

extent the Agreement itself is relevant, it is in the administrative record.  As the bankruptcy court

repeatedly held in denying discovery of materials underlying settlement agreements, "[w]hat's

important is the agreement itself,"[22] and discovery of settlement negotiations would have a

chilling effect on reaching such agreements.[23]

Finally, even if discovery were appropriate, AFA would not be allowed to probe the

thought processes and personal knowledge of senior officials who were involved in the agency's

determinations.  Because the basis of PBGC's decision is set forth in the administrative record,

---

[21]  *See National Law Center on Homelessness & Poverty v. Dep't of Veterans Affairs*,
736 F. Supp. 1148, 1153 (D.D.C. 1990) (The agency defendants "concede that these documents
are missing [from the administrative record].  In fact, they maintain that these documents are
*properly missing*.  . . .  GSA did not consider these documents when making its decision.
Accordingly, they were [properly] excluded from the record.") (emphasis added).

[22]  Transcript of argument (Bankr. N.D. Ill. June 2, 2004) (Attachment 6 hereto) at 26.

[23]  *See* Transcript of argument during deposition of Michael Kramer (May 5, 2005)
(Attachment 7 hereto) at 133-34:

> I think this [discovery of settlement negotiations] would have an enormously
> chilling effect on agreements being reached in bankruptcy.  I don't think that
> whatever can be gleaned from that kind of questioning would be commensurate to
> the burden and the negative impact on bankruptcy administration.  I, frankly, don't
> think that a great deal of useful information would be obtained by engaging in that
> questioning.

*Accord White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001)  ("[a]llowing
discovery of negotiations between parties to an ongoing litigation can have a chilling effect on
the parties' willingness to enter into agreements"); *Davenport v. Indiana Masonic Home Fdn,
Inc.*, 2003 WL 1888986 (S.D. Ind. Mar. 27, 2003), *2 (same).

and the Supreme Court has made clear that the integrity of the administrative process must be

respected,[24] AFA should not be allowed to depose agency officials.

> ### 2. Internal documents relating to PBGC's interpretation of 29 U.S.C. §§ 1341, 1342 and 1367 are not part of the administrative record of the termination decision, and should not be subject to discovery.

AFA asks the Court to compel PBGC to produce "all internal memoranda, guidelines,

directives, manuals, or similar documents produced by PBGC" relating to several provisions of

ERISA.[25]  Although such documents might be included in an administrative record if the agency

considered, relied upon or cited them in reaching a particular decision,[26] PBGC did not do so

here, and AFA does not even allege that it did.

AFA asserts only that "PBGC has internal directives," and cites an agency procedural

directive which has no place in the record documenting this termination decision.[27]  This simply

does not meet the standard for overcoming the "presumption that [the agency] properly

designated the administrative record, absent clear evidence to the contrary."[28]  As the D.C.

Circuit has made clear, unless there is bad faith or "the record is so bare that it prevents effective

---

[24] *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (holding that it "was error, and fatal to the decision" of the lower court, to compel the deposition and trial testimony of a senior government official, as "it was not the function of the court to probe the mental processes" of the agency decisionmakers).

[25] AFA Document Request, Attachment A to Motion to Compel, at ¶ 3.

[26] *See Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1160 (C.I.T. 1999) ("Only upon a showing of the latter [that the agency considered guidelines, directives, or manuals,] will the Court order these materials submitted into the administrative record").

[27] A procedural directive need not be included in the administrative record; only those documents that inform the decision must be included.  *See TOMAC v. Norton*, 193 F. Supp. 2d 182 (D.D.C. 2002) (administrative record does not include "every scrap of paper that could or might have been created").

[28] *The Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 55 (D.D.C. 2003).

judicial review," discovery is forbidden.[29]  And there is no exception to this bar on discovery for internal agency documents.[30]  Accordingly, AFA's request should be denied.

### 3. The Greenhill reports that PBGC considered are already included in the record.

The court's review must be based on the administrative record that was before the agency at the time it made its decision.[31]  The administrative record consists of the materials compiled by the agency,[32] and "[t]he agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary."[33]  To overcome this presumption, the plaintiff must show that the agency failed to explain administrative action so as to frustrate effective judicial review or show that documents considered by the agency were negligently or intentionally omitted from the record.[34]

AFA argues that it is entitled to discovery of unspecified reports prepared by PBGC's expert, Greenhill, prior to May 18, 2005, because "it can reasonably be inferred from the current administrative record" that PBGC received reports from Greenhill in the months prior to the termination of the FA Plan.[35]  AFA contends that "more than just the May 18 [Greenhill] memo should be part of a complete administrative record,"[36] ignoring the fact that PBGC included at least 4 earlier Greenhill reports in volume 10 of the record.  PBGC included in the record all the reports it considered in connection with its decision.  That record is entitled to a presumption of

---

[29] *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).

[30] *See Ammex, Inc. v. United States*, 2003 WL 22992063, *2 (C.I.T. 2003).

[31] *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 54 (D.D.C. 2003).

[32] *James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996).

[33] *Fund for Animals,* 245 F. Supp. 2d at 55.

[34] *James Madison*, 82 F.3d at 1095.

[35] Motion to Compel at 13-14.

[36] *Id.*

regularity and the plaintiff cannot redefine the administrative record "based on the materials [it] believe[s] the agency must (or should) have considered . . ."[37]

#### 4.    There is no "past practice" exception to the general prohibition against discovery.

AFA also argues that it is entitled to discovery on PBGC's past practice in connection with settlement agreements and termination recommendations.  AFA justifies its requests based only on its desire to rebut statements made by PBGC in opposing its motion for an injunction.

The statements AFA seeks to rebut have no bearing on the instant case.  In considering the injunction motion, the Court was not reviewing PBGC's administrative determination to terminate the Plan – as it had not yet occurred – and there was no administrative record informing the court.  AFA has not shown, and cannot show, that the data it seeks – every agency decision not to terminate a plan and every settlement agreement entered into prior to termination of a plan – was before the agency when it made its decision regarding the FA Plan.  The record may not be supplemented except in very limited circumstances.[38]  AFA has not established any "past practice" exception to the general ban on discovery in administrative records cases, and PBGC has found no such exception.

Moreover, although it may, in limited circumstances, be arbitrary and capricious to treat similarly situated entities differently without an explanation,[39] AFA has made no argument or allegation that it was subject to any such disparate treatment.  Even if it had, however, it would have to go beyond mere allegation and make a strong showing to avoid the general prohibition against discovery.[40]  Instead, it made no showing.

---

[37] *Fund for Animals,* 245 F. Supp. 2d at 55.

[38] *James Madison*, 82 F.3d at 1095; *Fund for Animals,* 245 F. Supp. 2d at 55.

[39] *See Universal Studios LLP v. Peters*, 308 F. Supp. 2d 1, 9 (D.D.C. 2004).

[40] *See U.S. v. Edelin,* 134 F. Supp. 2d 59, 86-87 (D.D.C. 2001) (persons seeking discovery on selective prosecution claims must make a strong showing in order to obtain discovery on other cases); *see also James Madison*, 82 F.3d at 1095.

Finally, the discovery AFA seeks is overly burdensome and not at all probative. Termination and settlement decisions are fact-intensive with numerous factors, and the information AFA seeks is not limited to decisions involving similar factors. It is not probative to compare dissimilar cases.[41] At the same time, the requests are highly burdensome, as they would require PBGC to review every settlement it has ever entered, and every termination recommendation since 1999. For all of these reasons, discovery about PBGC's past practices should be denied.

### 5.    The technical materials exception does not justify discovery

AFA argues that it should be allowed deposition discovery[42] regarding Greenhill's financial analysis of the benefit of the settlement agreement with respect to the FA Plan because that analysis is technical, and the bases for assumptions and methodologies used are not apparent from the document.[43] AFA's argument misconstrues the case law. In some cases, it is permissible for a court to obtain from an agency additional evidence explaining highly technical subjects, such as water quality standards,[44] forest management,[45] marine mammal conservation,[46] and geology.[47] Such specialized scientific issues are "highly technical"– routine financial

---

[41] *Universal Studios*, 308 F. Supp. 2d at 11; *see also United States v. Kramer*, 913 F. Supp. 848, 862 (D.N.J. 1995) (government's pattern of settling cases for less than 100 percent did not preclude it from recovering 100 percent in another case).

[42] AFA has issued no deposition notices to PBGC.

[43] Motion to Compel at 12-13.

[44] *Envt'l Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) (refusing admission of proffered affidavits).

[45] *Inland Empire Public Lands Council v. Schultz*, 807 F. Supp. 649, 651 (E.D. Wa. 1992).

[46] *Strahan v. Linnon*, 966 F. Supp. 111, 114-15 (D. Mass. 1997).

[47] *Colorado Envt'l Coalition v. Lujan*, 803 F. Supp. 364, 371 (D. Colo. 1992) (allowing additional explanation of computer modeling programs used to assign dollar values to mineral deposits).

analysis of the type at issue here is not. Research has revealed no cases allowing

supplementation of the record to explicate financial analysis on such grounds.

Furthermore, under the exception at issue, "*a court* may obtain from the agency . . . such

additional explanations" as are necessary for the court's understanding.[48] The fact that a court

may request and consider additional materials in such cases does not translate into a *party's* right

to discovery on such issues.[49]

Additionally, AFA's argument is disingenuous in that it implies that AFA has no

understanding of the report, when the assumptions used are common knowledge in the

bankruptcy case.[50] Moreover, Greenhill's assumption about PBGC's claim as a percentage of the

entire unsecured creditors' claim pool is based on data regularly distributed to members of the

Creditors Committee, of which AFA is an active member.

For all of these reasons, a Greenhill deposition is unwarranted.

**B.     AFA'S Allegations of Bad Faith are Insufficient
        to Overcome the Bar Against Discovery.**

As explained above, discovery is not permitted in cases involving limited judicial review

of agency action on the administrative record.[51] Indeed, a reviewing court may not go beyond the

---

[48] *Envt'l Defense Fund*, 657 F.2d at 285; *see also Asarco, Inc. v. U.S. Envt'l Protection Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980) (due to highly technical nature of inquiry, the court requested supplementary materials from the parties to aid its understanding); *Apex Construction Co. v. United States*, 719 F. Supp. 1144, 1147 n.1 (D. Mass. 1989) ("[o]ther possible grounds for obtaining discovery beyond the administrative record include: 1) cases where the agency decision involves highly scientific or technical matters that may need additional background explanation or clarification *for the benefit of the reviewing court*")(emphasis added).

[49] AFA cites in its support *Public Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982), but the Court there specifically stated that discovery was not necessarily warranted in usual circumstances, but there the Court would allow it under the unique circumstances of that case – where the Act authorizing decisions under review required challenges to be brought directly to the Court of Appeals and allowed that Court "a short period to review the merits."

[50] For example, the report's assumptions regarding the amount of PBGC's total claims and the claims attributable to the FA Plan are derived from the claims filed in the bankruptcy case.

[51] *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 136 (D.D.C. 2002).

administrative record unless there is "a strong showing of bad faith or improper behavior" in the decisionmaking process.[52]  Moreover, the court must presume regularity on the part of the agency in that process "absent the most powerful preliminary showing to the contrary."[53]  The D.C. Circuit has explained that this rule is necessary because of "[t]he ease with which charges of 'bad faith' could be leveled, combined with the inordinate burden resolution of such claims would entail for courts," as well as the obligation of courts to respect the autonomy of administrative agencies.[54]

Here, AFA has alleged that it is entitled to discovery because PBGC's consideration of the PBGC/UAL Agreement in the context of its deliberations on termination of the Plan was the result of bad faith or was otherwise improper.  Contrary to AFA's allegations, PBGC's inclusion and discussion of the Agreement it its decision does not evidence bad faith.  Rather, it indicates that PBGC openly and thoroughly considered all relevant information.[55]  AFA states that the outcome of PBGC's analysis under § 1342 "must have been apparent to the Agency all along," but just because AFA calls the agency's action bad faith does not make it so.  Plaintiffs must present more than conclusory allegations of bad faith to justify an exception to the general rule against discovery.[56]

Furthermore, the Agreement did not control PBGC's decision to terminate the FA Plan as AFA asserts.  The administrative record clearly demonstrates that but for termination of the Plan, the agency would be subject to losses in excess of $3 million a month for each month that the FA

---

[52] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

[53] *Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145-46 (2nd Cir. 1974).

[54] *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1327-29 (D.C. Cir. 1984).

[55] "Supplementation of the administrative record has been found to be appropriate, inter alia, when 'the agency failed to consider factors which are relevant to its final decision' or when 'an agency considered evidence which it failed to include in the record.'" *Ad Hoc Metals Coalition*, 227 F. Supp. 2d at 137.  Here no supplementation is appropriate as PBGC included all relevant factors in its record materials.

[56] *Coalition on Sensible Transp., Inc. v. Dole,* 826 F.2d 60, 72  (D.C. Cir. 1987).

Plan remained ongoing.[57] There was a strong possibility that the Plan would remain ongong for at least three additional months, subjecting PBGC to approximately $10 million of loss. Moreover, the record demonstrates that PBGC considered the serious underfunding in the FA Plan, made the judgment that there was no hope of further employer contributions being paid into the Plan based upon information contained in the record, and determined that the Plan would be unable to pay benefits when due. So long as an agency's findings are based upon acceptable factors, the fact that the record also contains factors supporting a different view will not invalidate the agency's decision.[58] Further, the issue for deciding this motion to compel is not whether to uphold the agency determination, but whether the agency engaged in bad faith.

    AFA also asserts that PBGC's bad faith is evidenced by the fact that the agency relied on an analysis that, in AFA's view, may not have contained complete information. AFA argues that PBGC acted in bad faith in considering a new analysis from Greenhill that "lacked information previously identified as absolutely vital to determining affordability."[59] Thus, the alleged bad faith is wholly dependent on AFA's view of the inadequacy or incorrectness of the new analysis. But alleged incorrectness of the analysis is not concrete evidence of bad faith, and "[s]upplementation of the administrative record to determine the correctness or wisdom of the agency's decision is specifically prohibited."[60]

    Finally, AFA suggests PBGC acted improperly by evaluating termination of the Plan "in terms of the settlement relating to all of United's plans."[61] But AFA is simply mistaken. Greenhill prepared an analysis of PBGC's likely recovery for claims attributable solely to the FA Plan under the PBGC/UAL Agreement as compared to a recovery for those same claims without

---

[57] See AR 7, 10-11.

[58] *Indiana Forest Alliance, Inc., v. United States Forest Service*, 325 F.3d 851, 861 (7th Cir. 2003).

[59] Motion to Compel at 15.

[60] *See Krichbaum v. U.S. Forest Svc.,* 973 F. Supp. 585 (W.D. Va. 1997).

[61] Motion to Compel at 12.

the Agreement.[62]   The analysis showed an increased recovery to PBGC for its claims based on
FA Plan losses under the Agreement as opposed to recoveries in contested scenario.  Accordingly,
despite the fact that the Agreement contemplates termination of all of United's underfunded
plans, PBGC's analysis of the settlement in the context of its decision to terminate in this
instance related to the FA Plan only.  "Bald assertions" like AFA's are not sufficient to overcome
the bar to discovery;[63] rather, there must be "independent evidence of improper conduct."[64]
Accordingly, there is no reason for this Court to allow discovery in this case.

## CONCLUSION

This Court's review of PBGC's determination that the FA Plan should be terminated is
limited to the administrative record, under the arbitrary and capricious standard.  Accordingly, no
discovery should be permitted.  AFA's motion to compel should be denied.


Dated: August 5, 2005                              Respectfully submitted,

                                                   /s/ Andrea M. Wong
                                                   JEFFREY B. COHEN, DC Bar #347880
                                                   Chief Counsel
                                                   CHARLES L. FINKE
                                                   Associate Chief Counsel
                                                   PAULA CONNELLY, DC Bar #389055
                                                   JOHN A. MENKE, DC Bar #370540
                                                   Assistant Chief Counsels
                                                   SHANNON L. NOVEY, DC Bar #476277
                                                   ANDREA M. WONG, DC Bar #449128
                                                   STEPHANIE L. THOMAS, DC Bar #440205
                                                   JACQUELYN M. GRAY
                                                   Attorneys
                                                   Pension Benefit Guaranty Corp.
                                                   Office of the Chief Counsel
                                                   1200 K Street, N.W.
                                                   Washington, DC  20005
                                                   wong.andrea@pbgc.gov and efile@pbgc.gov
                                                   (202) 326-4020, ext. 3448 (telephone)
                                                   (202) 326-4112 (facsimile)

---

[62]  See AR 32, 135-150.

[63]  *Charter Tp. of Van Buren v. Adamkus*, 1999 WL 701924, *5 (6th Cir. Aug. 30, 1999) (citation
omitted).

[64]  *San Luis Obispo Mothers for Peace,* 789 F.2d 44.