IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                       )
ASSOCIATION OF FLIGHT                  )
ATTENDANTS-CWA, AFL-CIO,               )
                                       )
          Plaintiff,                   )
                                       )
     v.                                ) Civil Action No. 1:05CV01036
                                       )
PENSION BENEFIT GUARANTY               )
CORPORATION,                           )
                                       )
          Defendant.                   )
_____)
```

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL DISCOVERY**

The Association of Flight Attendants-CWA, AFL-CIO ("AFA"), hereby submits its reply in support of its motion to compel discovery from defendant Pension Benefit Guaranty Corporation ("PBGC" or "Agency").  Adjudication of AFA's claims against PBGC requires discovery of materials beyond the administrative record as currently designated by the Agency.

**ARGUMENT**

**I.   AFA IS ENTITLED TO DISCOVERY RELATED TO THE SETTLEMENT AGREEMENT.**

AFA is entitled to the administrative record of the settlement agreement with United for two primary reasons.  First, given the nature of AFA's claim in this case -- that PBGC acted ultra vires in terminating the Flight Attendant Plan pursuant to the Agreement, the administrative record of the settlement is the record relevant to that claim.  Second, available evidence shows that PBGC's entry into the Agreement was intertwined with the eventual termination of the Plan.  Thus, the administrative record of the settlement is

properly considered part of the administrative record of termination. In addition, demonstrable bad faith and impropriety on the part of the Agency make available extra-record discovery in the form of depositions of John Spencer, Bradley Belt, and Michael Kramer.

> ### A. The Nature Of AFA's Claim Demands Review Of The Administrative Record Related To The Settlement.

In its opposition, PBGC attempts to mischaracterize the nature of this case, asserting that it simply involves review of the Agency's termination decision. PBGC Opp., at 1, 3-6. Defendant is or should be fully aware of the true nature of this action, as AFA has consistently made its claims clear in its original complaint, at the preliminary injunction stage, and in its amended complaint. As we stated in our motion to compel and repeat here:

> . . . this case is not simply a challenge to PBGC's decision to terminate the Flight Attendant Plan. Instead, AFA contends that the Agency acted ultra vires in proceeding with termination at the behest of an employer despite the contract bar and committed to termination prior to making a determination under Section 4042. Thus, we challenge both how the Agency came to make its termination decision, as well as the decision itself.

AFA Mot. to Compel, at 2. Stated even more bluntly, AFA contends that PBGC knew that entry into its Agreement with United would result in termination of the Flight Attendant Plan, and intended that result. That is our claim, as it has been from the commencement of this case. Having chosen to mischaracterize this claim instead of dealing with the real nature of this case, PBGC fails to offer any reason why AFA is not entitled to the administrative record relating to the settlement agreement.

In particular, AFA is entitled to the Agency's findings under Section 4067. As set forth in AFA's opening brief, the Agency's regulations under Section 4067 provide a formal process for payment arrangements with plan sponsors. In addition, the Agency must make certain factual determinations before it enters into such arrangements. See 29 C.F.R. §§ 4062.8 & 4067.1. At the preliminary injunction stage, PBGC asserted that its settlement agreement with United was simply part of its regular practice under Section 4067. Id. Given that representation and the Agency's reliance upon it to refute AFA's charge of ultra vires conduct, AFA is entitled to the administrative record of the Agency's Section 4067 process, and its required findings thereunder.

**B.  The Agreement And Termination Are So Interconnected That The Administrative Record For The Settlement Is Properly Part Of The Administrative Record Of Termination.**

All evidence available thus far shows that the settlement agreement and the eventual decision to terminate were intertwined. Most obviously, one of the stated reasons for terminating the Flight Attendant Plan was the settlement agreement. As the Agency has stated:

> A significant risk to PBGC's long-run loss is present if plan termination is delayed because such a delay places PBGC's Agreement at risk. The Agreement depends on the PBGC taking over all four of United's underfunded plans, including the FA Plan. Delay in termination of the FA Plan puts the Agreement at risk.

Admin. Rec., Vol. 1, at 7. In this way, PBGC's entry into the settlement agreement provided the Agency with grounds to terminate the Flight Attendant Plan. The significance of the settlement agreement as a cause for plan termination is increased by the fact

-3-

that PBGC's other proffered reasons for termination are based upon information known to the Agency before entry into the Agreement. See AFA Mot. to Compel, at 4-5.

In addition, the interconnection between the settlement and termination is further evidenced by the fact that the same people took part in both the settlement and the termination. John Spencer negotiated the settlement and made the staff recommendation to terminate. Jeffrey Cohen, PBGC's senior legal counsel throughout the relevant time period, was involved in both the settlement and the termination decision. Michael Kramer of Greenhill likewise was involved in both the settlement and termination phases of the process. Lastly, PBGC's Executive Director Bradley Belt was the final decision-maker for both the settlement and the termination.

It strains credulity to assert that the information developed in assessing the settlement agreement and the opinions formed in that stage of the process had no bearing on the termination decision ultimately reached. Indeed, these individuals had decided that the settlement agreement was in the best interests of PBGC. AFA is entitled to know the role that this determination played in the ultimate termination of the Plan, a process in which these same individuals played key parts.

There is also evidence from United that strongly suggests that PBGC knew and intended that the settlement agreement would result in plan termination. United represented to the Official Committee of Unsecured Creditors ("OCUC") that plan termination would take place within ten to fourteen days of court approval of the

-4-

settlement. Attachment A, at Slide 8. A debtor in bankruptcy owes a fiduciary duty to creditors to provide truthful information. In re V. Savino Oil & Heating Co., 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989). Plainly, United had some basis for that statement, and the most obvious source for such information is PBGC.

In addition, United informed the OCUC that the settlement agreement afforded the Company the benefits of: (1) "certainty and closure" in terms of pension funding; and (2) avoidance of "certain legal and economic risks," such as the "pension termination trial" under ERISA Section 4041. Attachment A, at Slide 9. United was to achieve these benefits because: "Under the terms of the settlement, the PBGC agreed to . . . [t]erminate and 'takeover' all of United's defined pension plans." Id. at Slide 2. Thus, United made clear its understanding that the settlement effected termination of all its plans.

All the evidence currently available points to the interconnectedness of the settlement and the eventual plan termination. It is this connection that AFA claims is ultra vires and unlawful. Thus, the administrative record of the settlement agreement is directly relevant to AFA's claims. Moreover, given the Agency's reliance on the settlement in order to terminate the plan, materials related to the settlement are properly part of the administrative record of the termination decision itself.

C.   **PBGC's Bad Faith And Impropriety Entitle AFA To Extra-Record Discovery.**

In addition to documents that are part of the administrative record of the settlement agreement, AFA is also entitled to take

the depositions of John Spencer, Bradley Belt and Michael Kramer. When an agency has acted in bad faith or improperly, discovery beyond the administrative record is permitted. See PBGC v. LTV Corp., 119 F.R.D. 339, 343-44 (S.D.N.Y. 1988). As pointed out above, these three individuals were principal players in the PBGC's decision to enter into the settlement and to terminate the Flight Attendant Plan. The extent to which the first decision determined the second can best be answered by those who were the architects of the settlement agreement. Also, the Agency's explanations of its conduct are marked by troubling inconsistencies. These inconsistencies show bad faith and impropriety because the Agency has offered different rationales to suit the expediency of a given moment. In such circumstances, AFA is permitted to probe the Agency's stated rationales through deposition.

The first inconsistency is the Agency's insistence to this Court at the preliminary injunction stage that the settlement did not dictate termination of the Flight Attendant Plan. PBGC Br., filed 5/27/05, at 13; Hearing Tr., dated 6/3/05, at 28. In fact, the administrative record produced thus far shows that the settlement provided the key rationale for termination of the plan.

A second inconsistency is the Agency's representation to the bankruptcy court in the Section 4041 process that a revised business plan from United was necessary to any determination of the viability of the Company's pension plans. Babcock Decl., filed 5/19/05, Ex. D at 5-6. Despite this unequivocal representation in a court filing, the Agency proceeded with termination without the

information previously asserted to be crucial to any evaluation of
the Company's pension plans.

Third, the Agency has consistently stated that pension plans
cannot be lumped together in making decisions about termination.
AFA Mot. to Compel, at 11.  Yet, in deciding whether to terminate
the Flight Attendant Plan, the Agency tied the fate of the Plan to
that of the Company's other plans.  The Agency did this when it
decided that the plan must terminate in order to avoid putting "at
risk" the Agreement with United, which is predicated on the
termination of all the Company's plans.  Admin. Rec., Vol. 1, at 7.

Fourth, the Agency has now given inconsistent explanations
related to its determination that the Agency risked a long-term
loss with respect to the Flight Attendant Plan.  During the
preliminary injunction phase, counsel for PBGC stated to the Court
that, if the Agency declined to terminate the Plan, the Section
4041 process previously initiated by United would resume.  Hearing
Tr., dated 6/3/05, at 11.  Counsel further explained that, if
United succeeded in establishing grounds for termination under that
process, the Plan would be terminated retroactive to June 30, 2005,
the termination date noticed by the Company.  Id.  Now, despite
PBGC's previous representation that a United-initiated termination
would be effective as of June 30, the Agency states in its
opposition to this motion that "[t]here was a strong possibility
that the Plan would remain ongoing for at least three additional
months, subjecting PBGC to approximately $10 million of loss."
PBGC Opp., at 13.  PBGC cites no support in the record for this new

contention that the Plan would not terminate absent PBGC
intervention for an additional three months, and there is no such
information in the record.  All these inconsistencies establish the
necessity of discovery beyond the administrative record.

## II.  AFA IS ENTITLED TO THE OTHER DISCOVERY REQUESTED IN ITS MOTION.

AFA requests the Agency's internal directives or other
guidance related to Sections 4041, 4042, and 4067 of ERISA.  In
seeking to defeat AFA's request for a preliminary injunction, the
Agency produced an internal directive related to its termination
process.  The Agency relied upon the directive to establish the
regularity of its processes.  Plainly, the Agency believed that its
internal guidance was relevant to adjudication of this case to show
that the Agency would rely on established guidance in the
administrative process.  Now, the Agency asserts that further
guidance materials need not be produced because the Agency did not
consider or rely upon them in its termination process.  PBGC Opp.,
at 7.  PBGC cannot have it both ways.  It also strains credulity to
believe that the Agency did not rely even indirectly on its
internal directives in the termination process.  If that is true,
then its actions should not be afforded the presumption of
regularity that the Agency repeatedly invokes.

AFA also requests information on the Agency's past practice
under Sections 4067 and 4042.  At the preliminary injunction stage,
the Agency made certain representations about its practices in
order to rebut AFA's claim that it acted ultra vires.  Accordingly,
AFA has requested discovery related to those claims upon which the

Agency relied. Specifically, the Agency asserted that it enters into agreements such as the one with United regularly and that its internal review process for terminations is not a "rubber stamp." Having made and relied upon these representations, the Agency now asserts that these representations are immaterial to this case. PBGC Opp., at 9. But the issues of ultra vires conduct raised at the preliminary injunction stage remain material to AFA's claims. As for the Agency's assertion that AFA's requests related to past practice are unduly burdensome, AFA is willing to work with the Agency to refine its requests to the extent necessary to avoid any undue burden.

Lastly, AFA requests a Rule 30(b)(6) deposition of a representative of Greenhill regarding the financial analysis of pension liabilities produced by the company and relied upon by PBGC in the termination process. We submit that the Greenhill analysis is complex and technical, such that the document does not speak for itself. A copy is attached hereto as Attachment B. PBGC suggests that we feign lack of understanding regarding the contents of the document. The Agency is mistaken. For example, the report assumes that PBGC will face $388 million in additional liabilities if it does not prevail in the litigation over the timing of termination of the Pilots' Plan and the Union Ground Plan. The report further explains that the settlement agreement did not resolve this liability. Nowhere in the report does Greenhill explain how it determined that the PBGC's liabilities would increase by $388 million. Moreover, Greenhill's reliance upon this figure

materially affects the conclusions in its analysis.  <u>See</u> Admin. Rec., Vol. 1, at 145-50.

## <u>CONCLUSION</u>

For all the foregoing reasons, AFA respectfully requests that the Court grant its motion to compel discovery.

Respectfully submitted,

<u>/s/ Robert S. Clayman</u>
Robert S. Clayman, D.C. Bar No. 419631
Carmen R. Parcelli, D.C. Bar. No. 484459
GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C.
1625 Massachusetts Avenue, N.W., Ste. 700
Washington, DC 20036
(202) 624-7400

Counsel for Association of Flight
Dated: August 8, 2005    Attendants-CWA, AFL-CIO

-10-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2005, I electronically filed Plaintiff's Reply in Support of Motion to Compel Discovery using the CM/ECF system. I further certify that on August 8, 2005, a true and correct copy of the same was served by electronic mail on:

            Jeffrey B. Cohen
            Chief Counsel
            Pension Benefit Guaranty Corporation
            1200 K Street, N.W.
            Washington, D.C.  20005
            cohen.jeffrey@pbgc.gov.

            Attorney for defendant PBGC


            /s/ Carmen R. Parcelli
            Carmen R. Parcelli

# ATTACHMENT  A



# PBGC Settlement Agreement

## April 29, 2005

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

UNITED

1-033449
CONFIDENTIAL

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Background

- **To create a financeable business plan and successfully reorganize, United determined it was necessary to terminate and replace all of its defined benefit pension plans**

- **In December 2004, United reached a consensual agreement with ALPA whereby ALPA basically agreed not to oppose termination of its defined benefit pension plan**

  - Similar agreements were reached with PAFCA and TWU

- **However, United has not been successful in reaching a consensual resolution with its other unions**

  - Several unions said they would never agree to pension termination

- **As a result, United pursued settlement negotiations with the PBGC, while continuing to negotiate with its unions**

- **On April 22, United and the PBGC reached agreement on a global settlement of virtually all issues between them in connection with United's Chapter 11 reorganization**

**UNITED**

Slide 1

1-033450
CONFIDENTIAL

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Overview Of Settlement Agreement

- **Under the terms of the settlement, the PBGC agreed to:**

  – Terminate and "takeover" all of United's defined benefit pension plans and waive restoration rights (United to act consistent with ALPA agreement)

  – Settle all pension-related claims against United, including IFS minimum funding contribution claim and alleged setoff rights

  – Assign 45% of its distribution on account of claims in United's bankruptcy

  – Support United's restructuring activities and plan of reorganization in connection with agreement (fiduciary duties as OCUC member unfettered)

- **In return, United has agreed to issue certain securities to the PBGC pursuant to a plan of reorganization**

  – Estimated market value of securities considerably below face based on the terms of the securities

  – No cash requirements until 2012 based on G5.0F projections

  – Judicial approval of consideration same as judicial approval of 4/30/03 CBA restructuring agreements

- **DIP and Exit Lender feedback very positive**

**UNITED**

1-033451
CONFIDENTIAL

Slide 2

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Summary Terms of New Securities To Be Issued To The PBGC

- **$500m 6% Senior Subordinated Notes**
  - 25-year term
  - Interest payable semi-annually in arrears with in-kind notes or common stock through 2011, thereafter payable in cash
  - Unsecured
  - Ranking
    - Junior to exit financing
    - Senior to labor notes
    - Pari passu with all other unsecured debt
  - Callable at 100% of par at any time
  - No amortization prior to maturity

- **$500m 2% Convertible Preferred Stock**
  - 15-year term
  - Dividends payable-in-kind semi-annually with additional shares of preferred stock
  - Convertible into common stock any time following the 2nd anniversary of the issuance date
  - Conversion price to be set at 125% of average closing price of common stock during the first 60 days following emergence from bankruptcy
  - Mandatorily convertible at maturity

**UNITED**

1-033452
CONFIDENTIAL

Slide 3

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Summary Terms of New Securities To Be Issued To The PBGC (Cont'd)

- Up to $500m 8% Contingent Senior Subordinated Notes

  - Up to 8 tranches of $62.5m notes to be issued if the following conditions are met:
    - Last-twelve-months EBITDAR exceeds $3.5 billion
    - Issuance does not trigger a default under any securities existing at the time
  - Tested twice annually at 6/30 and 12/31 during the period 6/30/2009 through 12/31/2017
  - 15-year term
  - Interest payable semi-annually in arrears
  - Unsecured
  - Ranking – same as 6% Senior Subordinated Notes
  - Callable at 100% of par at any time
  - No amortization prior to maturity
  - Common stock to be issued in lieu of notes if issuance of notes would cause a default under any securities existing at the time

Slide 4

1-033453
CONFIDENTIAL

UNITED

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Cost / Benefit Analysis

**Cost to Estate ($m)**

| | Low | Mid-Point | High |
|---|---|---|---|
| $500m 6.0% Senior Sub. Notes (1) | $232 | $273 | $313 |
| $500m 2.0% Convertible Preferred Stock (2) | 335 | 405 | 474 |
| Up to $500m 8.0% Contingent Senior Sub. Notes | ? | ? | ? |
| Total | $567 | $677 | $787 |

**Benefits to Estate ($m)**

| | Low | Mid-Point | High |
|---|---|---|---|
| Avoided Minimum Funding Admin. Claim (3) | $50 | $231 | $993 |
| Funded Status of Pension Plans (4) | 2,289 | 3,041 | 3,792 |
| Less: Cost of Replacement Plans (5) | (266) | (318) | (370) |
| Waiver of Super-Priority Admin. Claim on Orbitz Proceeds (6) | 0 | 121 | 241 |
| Waiver of Setoff Rights / Resolution of DOJ Stipulation (7) | 0 | 193 | 386 |
| Assignment of 45% of Dist. on Account of PBGC Claims | ? | ? | ? |
| Waiver of Claims Against Non-Debtor Entities (8) | 0 | 52 | 103 |
| Waiver of Joint and Several Aspect of All Claims | ? | ? | ? |
| Closure and Certainty Regarding Pension Obligations | ? | ? | ? |
| Total | $2,073 | $3,320 | $5,145 |

**Contingent Note Value Analysis**

Illustrative Annual 2011-2017 EBITDAR Growth

| Discount Rate | 1.0% | 2.0% | 3.0% | 4.0% |
|---|---|---|---|---|
| 9.0% | $ - | $ 85 | $ 186 | $ 202 |
| 10.0% | - | 70 | 156 | 171 |
| 11.0% | - | 59 | 131 | 146 |

**Value of 45% of PBGC Claim (9)**

| Illustrative Common Equity Value | Size of Unsecured Claim Pool | | |
|---|---|---|---|
| | $ 25,000 | $ 30,000 | $ 35,000 |
| $ 1,000 | 171 | 143 | 122 |
| 1,250 | 214 | 178 | 153 |
| 1,500 | 257 | 214 | 183 |
| 1,750 | 299 | 249 | 214 |
| 2,000 | 342 | 285 | 244 |

1-033454
CONFIDENTIAL

(1) Estimated cost based on 9-11% discount rate range
(2) Bond portion of cost based on 13-15% discount rate range. Option portion of cost based on 25-50% volatility range
(3) Mid-point amount represents current, conservative estimate contained in G5.0F
(4) Low value includes AFA and MA&PC plans. High value includes AFA, MA&PC and Union Ground plans. Amounts based on estimated PBO funded status as of 12/31/2004 (5.91% discount rate for AFA and MA&PC plans; 5.88% discount rate for Union Ground plan)
(5) Low value includes AFA and MA&PC replacement plans. High value includes AFA, MA&PC and Union Ground replacement plans. Amounts estimated based on present value of 2005-2010 replacement plan cost using 6.1% current liability discount rate
(6) High value assumes no substantive consolidation or successful cramdown. Mid-point is average of high and low
(7) High value assumes PBGC success in asserting administrative claim for UBL. Mid-point is average of high and low
(8) Includes asserted claims for 412(n) liens against non-debtor entities and penalty payments for failure to pay premiums. High value assumes PBGC can monetize book value of non-debtor entities' assets
(9) Based on $9.5 billion UBL claim calculated according to PBGC regulations. Amount of allowed claim may be lower and claim may be offset by value of consideration received under PBGC agreement

Slide 5

UNITED

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Estimated Cash Flow Impact On United

| | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|
| **Cash Flow Impact of New Securities** | | | | | | |
| $500mm 6.0% Senior Subordinated Notes | $ - | $ - | $ - | $ - | $ - | - |
| $500mm 2.0% Convertible Preferred Stock | - | - | - | - | - | - |
| Up to $500mm 8.0% Contingent Senior Subordinated Notes[1] | - | - | - | - | - | - |
| **Total Cash Impact** | - | - | - | - | - | - |
| **Cash Savings From Settlement** | | | | | | |
| AFA Plan[2] | $ 196 | $ 159 | $ 219 | $ 50 | $ - | - |
| MAPC Plan[2] | 515 | 223 | 291 | 71 | - | - |
| Union Ground Plan[2] | 519 | 327 | 309 | 125 | 23 | - |
| Less: Cost of Replacement Plans | (40) | (77) | (78) | (79) | (78) | (82) |
| Administrative Claims | 231 | - | - | - | - | - |
| **Total Cash Savings** | 1,421 | 632 | 741 | 167 | (55) | (82) |
| **Total Cash Savings relative to G5.0F[3]** | 231 | - | - | - | - | - |
| **Fixed Charge Coverage Ratio Comparison** | | | | | | |
| Target[4] | 1.50x | 1.75x | 2.00x | - | - | - |
| Gershwin 5.0F + Labor Note[4][5] | 1.52x | 1.74x | 1.97x | 2.07x | 2.26x | 2.45x |
| B (W) than Target | 0.02x | (0.01x) | (0.03x) | - | - | - |
| Gershwin 5.0F + PBGC Agreement + Labor Note[1][5] | 1.52x | 1.74x | 1.97x | 2.07x | 2.27x | 2.45x |
| B (W) than Target | 0.02x | (0.01x) | (0.03x) | - | - | - |

(1) Assumes contingent notes are not issued
(2) Projected minimum funding requirements
(3) Excludes impact of reduced profit sharing due to higher interest expense
(4) Original targets assuming 6/30/2005 emergence date, were 1.25x at emergence, 1.50x at 12/31/2005 or 1 year following emergence, 1.75x at 12/31/2006, and 2.00x at 12/31/2007. Represents (EBITDAR – Capex) / (Cash Interest + Cash Aircraft Rent)
(5) Includes $755m labor note

1-033455
CONFIDENTIAL

Slide 6

 UNITED

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Other Provisions

- **The effectiveness of the PBGC Settlement Agreement is subject to the occurrence of the following conditions subsequent (United can waive):**

  – Termination of all of the pension plans pursuant to Title IV of ERISA

  – PBGC's waiver of its restoration and cessation rights

  – United having determined that liability to PBGC and others for pension related claims and liability under DOJ stipulation has been resolved to its satisfaction

  – Elimination of PBGC alleged setoff rights

  – Removal of IFS as plan independent fiduciary

  – The ALPA Settlement Order becoming a non-appealable order

- **PBGC has to consent to replacement plans, consent not to be unreasonably withheld (with process for judicial resolution)**

Slide 7

1-033456
CONFIDENTIAL

UNITED

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Termination Timing

- **Hearing to approve PBGC settlement on May 4**

- **Ground Plan trustee agreement signed soon thereafter**
  - Termination date 3/11/2005

- **10-14 Days after May 10 hearing, PBGC issues notice of determination that AFA and MA&PC plans should terminate**

- **UAL and PBGC execute trustee agreement for AFA and MA&PC plans**
  - Termination date 5 days after notice of determination

- **Execute trustee agreement on ALPA plan soon after May 10 hearing (to the extent consistent with ALPA deal)**
  - Termination date same as latest date of any other plan
  - Court to determine if termination date is earlier (PBGC will seek 12/30/2004 termination date)

1-033457
CONFIDENTIAL

UNITED

Slide 8

PRESENTATION TO OCUC OF UNITED, SUBJECT TO
ALL APPLICABLE CONFIDENTIALITY RESTRICTIONS

# Benefits of Settlement: Key Takeaways

- Benefits of settlement to United far outweigh value of consideration to PBGC, even assuming 100% success in plan termination litigation

- Settlement fits within business plan (actually cash positive) and exit financing target metrics

- Provides greater certainty and closure by eliminating
  - Uncertainty of future DB funding
  - Restoration funding risk

- Avoids certain legal and economic risks
  - Pension termination trial
  - Minimum funding contribution litigation
  - Setoff/administrative claim litigation
  - Substantive consolidation/ joint and several liability
  - Appeal/"Special Metals" risk

- Significantly narrows scope of 1113 trial

- Consistent with ALPA agreement

- Preserves third party rights based on April 30, 2003 ruling

1-033458
CONFIDENTIAL

Ⓤ U N I T E D

Slide 9

# ATTACHMENT  B

Att. 12

Presentation to the Pension Benefit Guaranty Corporation

# FA Plan Recovery Analysis

May 12, 2005

Greenhill

AR-00135

# Table of Contents

1   **Executive Summary**

2   FA Plan Recovery Analysis


Appendix

Greenhill

## Executive Summary

- Greenhill has compared the PBGC's potential recovery on its FA Plan claim under scenarios both with and without the agreement with United Airlines to terminate the plan (the "Consensual Outcome" and "Contested Outcome", respectively)

- The analysis is based on the assumption that the FA Plan is terminated in either outcome and that the PBGC's recovery level in the Contested Outcome on its unsecured unfunded benefit liability ("UBL") claim would be in the 5.0% to 7.0% range

- Greenhill's conclusion is that under any reasonable scenario, the PBGC's claim recovery on the FA Plan is higher in the Consensual Outcome

Greenhill

3

# Table of Contents

1    Executive Summary

2    FA Plan Recovery Analysis

Appendix

AR-00138

Greenhill

# Unsecured UBL Claim Recovery

- Greenhill has made the following assumptions in order to determine a likely recovery percentage on the PBGC's UBL claim in the Contested Outcome

  - Potential total allowed PBGC claim ranging from $3.6 billion (DRC-type calculation) to $9.8 billion (PBGC calculation), of which up to $1.8 billion relates to the FA Plan

  - The PBGC's claim as a percentage of the entire unsecured creditors' claim pool of 15%–30%

  - A post-exit UAL equity value range of $1,250 million to $3,250 billion

- Varying the PBGC's percentage of total unsecured claims and UAL's equity value at exit, the table below suggests a base case claim recovery percentage of approximately 5.0% and an upside case claim recovery of approximately 7.0%

|  | | UAL Equity at Exit | | | | |
|---|---|---|---|---|---|---|
|  | | $1,250 | $1,750 | $2,250 | $2,750 | $3,250 |
| PBGC Claim % | 15% | 1.9% | 2.7% | 3.5% | 4.2% | 5.0% |
|  | 20% | 2.6% | 3.6% | 4.6% | 5.6% | 6.7% |
|  | 25% | 3.2% | 4.5% | 5.8% | 7.0% | 8.3% |
|  | 30% | 3.8% | 5.4% | 6.9% | 8.5% | 10.0% |

- Although it is likely that the prolonged effect of litigation in the Contested Outcome would negatively impact UAL's equity value at exit, we have assumed no such impact on equity value

Greenhill

AR-00139

5

# Contested Outcome Recovery

- Since there is no agreement regarding the PBGC's requested termination dates on the Pilots' and the Union Ground plans in the Contested Outcome, the additional liability the PBGC assumes as a result of the increase in benefits guaranteed under these two plans would be approximately $388 million

- In addition to the PBGC's unsecured claim recovery, as adjusted above, the PBGC has a number of other potential claims ("Non-UBL Related Claims") in the Contested Outcome that would be forfeited in the Consensual Outcome, including:

  - IFS Motion Proceeds

  - Super-Priority Admin. Claim on Orbitz Proceeds

  - 412(n) Liens

  - Penalty payments for failure to pay premiums

  - IRS Refunds

- In the analysis that follows, we have assumed various recovery percentages on each of these Non-UBL Related Claims, though these are ultimately dependent on the outcome of the PBGC's litigation of each issue

Greenhill

AR-00140

# Consensual Outcome Valuation

- Greenhill's analysis of the securities issued and other consideration granted as part of the Consensual Outcome (the "Agreement Securities") yielded a midpoint present value of $1.0 billion to the PBGC

**4.22.05 PBGC-UAL Agreement**

| | Estimated Present Value Range | | Cost of Capital Range | | Midpoint Present Value |
|---|---|---|---|---|---|
| *$480 Million 6% Senior Sub. Note* | $223 | - $300 | 9% - | 11% | $262 |
| *$500 Million 2% Convertible Preferred Stock* | | | | | |
| Bond Portion Valuation | $108 | $141 | 11% - | 13% | $124 |
| Convertible Option Valuation [1] | $202 | $252 | | | $227 |
| *Total Value* | $310 | $393 | | | $351 |
| *$500 Million Contingent 8.0% Senior Sub. Note* [2] | $117 | - $180 | | | $149 |
| *Concession of Overfunded 5th Plan* | $20 | - $20 | | | $20 |
| *Adjusted PBGC Recovery on Unsecured Claim* [3] | $103 | - $358 | | | $211 |
| *Payment of PBGC Advisory Fees* | $7 | - $7 | | | $7 |
| **Total Value to PBGC** | **$780** | **- $1,258** | | | **$1,000** |

(1) Midpoint present value assumes stock price volatility of 20% and strike price equivalent to 25% premium on underlying asset value.
High end of range assumes 25% stock price volatility and 25% strike price premium to underlying asset value.
Low end of range assumes 15% stock price volatility and 25% strike price premium to underlying asset value.
(2) Low end of valuation assumes United clears the hurdles for the *seven* semi-annual periods starting December 2014.
High end of valuation assumes United clears the hurdles for the *eight* semi-annual periods starting December 2012.
(3) Midpoint calculated assuming $1.5 billion equity value and PBGC claim as a percentage of total unsecured claims of 25.6%.

Greenhill

7

AR-00141

# Contested v. Consensual Recovery

- To compare the PBGC's recovery as a result of terminating the plan under the Consensual Outcome to its FA Plan recovery in the Contested Outcome, Greenhill took the following steps:

  ▶ First, Greenhill assumed the FA Plan would have been terminated whether or not the Settlement was reached

  ▶ Second, we estimated the net recoveries the PBGC would have obtained for each of its significant claims against the estates in the Contested Outcome

    – The claims considered include unsecured UBL Claims and the Non-UBL Related Claims described on page 6

    – Greenhill reduced the recoveries attributable to its unsecured UBL Claims on the other terminated plans by the $388 million of incremental liabilities the PBGC could have incurred if the Debtors did not agree with the PBGC's termination dates for those plans

  ▶ Third, Greenhill calculated the percentage of the PBGC's total net recovery under the Contested Outcome that is attributable to its FA Plan claims

  ▶ Next, Greenhill multiplied the resulting percentage by the value of the Agreement Securities to estimate the amount of value the PBGC received in respect of the FA plan under the Consensual Outcome

  ▶ Last, Greenhill compared the value of Agreement Securities allocated to the FA Plan using this methodology to the estimated recovery in respect of the FA Plan under the Contested Outcome to determine whether terminating the FA Plan improves the PBGC's financial position in respect thereof

Greenhill

8

# Contested v. Consensual Recovery

- Greenhill has examined several scenarios assuming various recovery percentages on the PBGC's Non-UBL Related Claims and UBL Claims

- The table below presents the net benefit to the PBGC of the Consensual Outcome, specifically regarding its claim recovery on the FA Plan:

| Recovery on Non-UBL Related Claims | Recovery on UBL Claims | No Settlement Recovery on FA Claim | Settlement Recovery on FA Claim | Net Benefit | % Better / (Worse) |
|---|---|---|---|---|---|
| 0% | 7.0% | $126 | $423 | $297 | 236% |
| 50% | 7.0% | $126 | $204 | $78 | 62% |
| 100% | 7.0% | $126 | $134 | $8 | 6% |
| 0% | 5.0% | $90 | $882 | $792 | 880% |
| 50% | 5.0% | $90 | $213 | $123 | 137% |
| 100% | 5.0% | $90 | $121 | $31 | 35% |

- As illustrated, if the PBGC receives a 5% recovery on its UBL Claims and is unsuccessful in receiving value for its Non-UBL Related Claims, the Consensual Outcome is considerably more attractive

- Even assuming a maximum recovery on the Non-UBL Related Claims and an aggressive 7% recovery on the PBGC's UBL claim, the Consensual Outcome still provides an incremental $8 million of value to the PBGC's recovery on the FA Plan

9

Greenhill

10

# Table of Contents

1   Executive Summary

2   FA Plan Recovery Analysis

**Appendix**

Greenhill

AR-00144

# Appendix

| PBGC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 0% | $0 | 0% | $0 | 0% | $0 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 0% | $0 | 0% | $0 | 0% | $0 |
| 412(n) Liens | $8 | 0% | $0 | 0% | $0 | 0% | $0 |
| United Airlines Ventures, Inc. | $94 | 0% | $0 | 0% | $0 | N/A | $0 |
| Covia | $0 | 0% | $0 | 0% | $0 | 0% | $0 |
| ULS Ventures | $9 | 0% | $0 | 0% | $0 | 0% | $0 |
| Penalty payments for failure to pay premiums | $20 | 0% | $0 | 0% | $0 | 0% | $0 |
| IRS Refunds | | | | | | | |
| **Subtotal** | **$641** | **0%** | **$0** | **0%** | **$0** | **0%** | |
| | | | | | | | |
| FA Plan Unfunded Liability Claim | $1,800 | 7.0% | $126 | 42% | $423 | 23% | $297 |
| All Other Plans Unfunded Liability Claim | $8,000 | 7.0% | $560 | | | | |
| Delayed Termination Losses | ($388) | | ($388) | 58% | $577 | 8% | $405 |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $172 | 100% | $1,000 | 11% | $702 |
| **Subtotal** | **$9,412** | | **$298** | | **$1,000** | | **$702** |
| | | | | | | | |
| **Total** | **$10,053** | | **$298** | **100%** | **$1,000** | | |

Greenhill

AR-00145

# Appendix

| PBGC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 50% | $130 | 21% | $210 | 81% | $80 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 50% | $125 | 20% | $202 | 81% | $77 |
| 412(n) Liens | | | | | | | |
| United Airlines Ventures, Inc. | $8 | 50% | $4 | 1% | $6 | 81% | $2 |
| Covia | $94 | 50% | $47 | 8% | $76 | 81% | $29 |
| ULS Ventures | $0 | 50% | $0 | 0% | $0 | N/A | $0 |
| Penalty payments for failure to pay premiums | $9 | 50% | $5 | 1% | $7 | 81% | $3 |
| IRS Refunds | $20 | 50% | $10 | 2% | $16 | 81% | $6 |
| **Subtotal** | **$641** | **50%** | **$321** | **52%** | **$518** | **81%** | **$198** |
| FA Plan Unfunded Liability Claim | $1,800 | 7.0% | $126 | 20% | $204 | 11% | $78 |
| All Other Plans Unfunded Liability Claim | $8,000 | 7.0% | $560 | | | | |
| Delayed Termination Losses | ($388) | | ($388) | | | | |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $172 | 28% | $278 | 4% | $106 |
| **Subtotal** | **$9,412** | | **$298** | **48%** | **$482** | **5%** | **$184** |
| **Total** | **$10,053** | | **$619** | **100%** | **$1,000** | | **$382** |

12

AR-00146

Greenhill

# Appendix

| PGBC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 100% | $260 | 26% | $260 | 100% | $0 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 100% | $250 | 25% | $250 | 100% | $0 |
| 412(n) Liens | | | | | | | |
| United Airlines Ventures, Inc. | $8 | 100% | $8 | 1% | $8 | 100% | $0 |
| Covia | $94 | 100% | $94 | 9% | $94 | 100% | $0 |
| ULS Ventures | $0 | 100% | $0 | 0% | $0 | N/A | $0 |
| Penalty payments for failure to pay premiums | $9 | 100% | $9 | 1% | $9 | 100% | $0 |
| IRS Refunds | $20 | 100% | $20 | 2% | $20 | 100% | $0 |
| **Subtotal** | **$641** | **100%** | **$641** | **64%** | **$641** | **100%** | **$0** |
| FA Plan Unfunded Liability Claim | $1,800 | 7.0% | $126 | 13% | $134 | 7% | $8 |
| All Other Plans Unfunded Liability Claim | $8,000 | 7.0% | $560 | | | | |
| Delayed Termination Losses | ($388) | | ($388) | | | | |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $172 | 22% | $225 | 3% | $53 |
| **Subtotal** | **$9,412** | | **$298** | **36%** | **$359** | **4%** | **$61** |
| **Total** | **$10,053** | | **$939** | **100%** | **$1,000** | | **$61** |

AR-00147

Greenhill

# Appendix

| PBGC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 0% | $0 | 0% | $0 | 0% | $0 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 0% | $0 | 0% | $0 | 0% | $0 |
| 412(n) Liens | | | | | | | |
| United Airlines Ventures, Inc. | $8 | 0% | $0 | 0% | $0 | 0% | $0 |
| Covia | $94 | 0% | $0 | 0% | $0 | 0% | $0 |
| ULS Ventures | $0 | 0% | $0 | 0% | $0 | N/A | $0 |
| Penalty payments for failure to pay premiums | $9 | 0% | $0 | 0% | $0 | 0% | $0 |
| IRS Refunds | $20 | 0% | $0 | 0% | $0 | 0% | $0 |
| Subtotal | $641 | 0% | $0 | 0% | $0 | 0% | $0 |
| FA Plan Unfunded Liability Claim | $1,800 | 5.0% | $90 | 88% | $882 | 49% | $792 |
| All Other Plans Unfunded Liability Claim | $8,000 | 5.0% | $400 | | | | |
| Delayed Termination Losses | ($388) | | ($388) | | | | |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $12 | 12% | $118 | 2% | $106 |
| Subtotal | $9,412 | | $102 | 100% | $1,000 | 11% | $898 |
| Total | $10,053 | | $102 | 100% | $1,000 | | $898 |

14

AR-00148

Greenhill

# Appendix

| PBGC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 50% | $130 | 26% | $260 | 100% | $130 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 50% | $125 | 25% | $250 | 100% | $125 |
| 412(n) Liens | | | | | | | |
| United Airlines Ventures, Inc. | $8 | 50% | $4 | 1% | $8 | 100% | $4 |
| Covia | $94 | 50% | $47 | 9% | $94 | 100% | $47 |
| ULS Ventures | $0 | 50% | $0 | 0% | $0 | N/A | $0 |
| Penalty payments for failure to pay premiums | $9 | 50% | $5 | 1% | $9 | 100% | $5 |
| IRS Refunds | $20 | 50% | $10 | 2% | $20 | 100% | $10 |
| Subtotal | $641 | 50% | $321 | 64% | $641 | 100% | $321 |
| FA Plan Unfunded Liability Claim | $1,800 | 5.0% | $90 | 21% | $213 | 12% | $123 |
| All Other Plans Unfunded Liability Claim | $8,000 | 5.0% | $400 | | | | |
| Delayed Termination Losses | ($388) | | ($388) | | | | |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $12 | 15% | $146 | 2% | $134 |
| Subtotal | $9,412 | | $102 | 36% | $359 | 4% | $257 |
| Total | $10,053 | | $423 | 100% | $1,000 | | $578 |

15

Greenhill

AR-00149

## Appendix

| PBGC Potential Claims | Best Case Recovery | Probable Recovery % | No Settlement Recovery | % of Total | Settlement Recovery | % of Best Case Recovery | Net Benefit |
|---|---|---|---|---|---|---|---|
| IFS Motion Proceeds | $260 | 100% | $260 | 26% | $260 | 100% | $0 |
| Super-Priority Admin. Claim on Orbitz Proceeds | $250 | 100% | $250 | 25% | $250 | 100% | $0 |
| 412(n) Liens | | | | | | | |
| United Airlines Ventures, Inc. | $8 | 100% | $8 | 1% | $8 | 100% | $0 |
| Covia | $94 | 100% | $94 | 9% | $94 | 100% | $0 |
| ULS Ventures | $0 | 100% | $0 | 0% | $0 | N/A | $0 |
| Penalty payments for failure to pay premiums | $9 | 100% | $9 | 1% | $9 | 100% | $0 |
| IRS Refunds | $20 | 100% | $20 | 2% | $20 | 100% | $0 |
| Subtotal | $641 | 100% | $641 | 64% | $641 | 100% | $0 |
| | | | | | | | |
| FA Plan Unfunded Liability Claim | $1,800 | 5.0% | $90 | 12% | $121 | 7% | $31 |
| | | | | | | | |
| All Other Plans Unfunded Liability Claim | $8,000 | 5.0% | $400 | 24% | $238 | 3% | $226 |
| Delayed Termination Losses | ($388) | | ($388) | | | | |
| Net All Other Plans Unfunded Liability Claim | $7,612 | | $12 | 24% | $238 | 3% | $226 |
| Subtotal | $9,412 | | $102 | 36% | $359 | 4% | $257 |
| | | | | | | | |
| Total | $10,053 | | $743 | 100% | $1,000 | | $257 |

AR-00150

Greenhill

16