IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS – CWA, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> PENSION BENEFIT GUARANTY CORPORATION, <br><br> Defendant. | Civil Action No.: 1:05CV01036 (ESH) |

**MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING FILING DOCUMENTS UNDER SEAL**

The Pension Benefit Guaranty Corporation ("PBGC") moves for entry of an order authorizing PBGC to file under seal the Supplement to Volume 12 of the Administrative Record ("Supplement to the Record") of its termination decision that this Court ordered it to file on August 10, 2005. Although PBGC believes the Supplement to the Record fits that the original order and memorandum permitting a portion of the record to be filed under seal, PBGC files this motion out of an abundance of caution.

The Supplement to the Record includes analyses of settlement proposals between United Air Lines, Inc. and PBGC. These documents were created during difficult negotiations over a multitude of issues surrounding United's pension plans, and have been kept confidential in accordance with a confidentiality agreement with United. Their release would destroy the understanding between the parties that the negotiations were to be confidential and that United

1

was providing confidential financial and commercial information to facilitate negotiations, and harm PBGC's ability to fulfill its statutory function of regulating the termination of underfunded pension plans. For these and further reasons set out below, PBGC respectfully requests that these documents be sealed.

**BACKGROUND**

The Association of Flight Attendants-CWA, AFL-CIO ("AFA") filed the instant action on May 20, 2005, seeking to enjoin PBGC from initiating the decision-making process to terminate the United Airlines Flight Attendant Defined Benefit Pension Plan ("FA Plan" or "Plan"). AFA's motion for preliminary injunction was denied by the Court in an opinion dated June 8, 2005. On June 23, 2005, after completing its deliberations, PBGC issued a Notice of Determination that the Plan should be terminated pursuant to 29 U.S.C. § 1342. Effective June 30, 2005, as authorized by 29 U.S.C. § 1342(c), PBGC and United entered into an agreement terminating the Plan and appointing PBGC trustee of the Plan as of that date.

On June 30, 2005, AFA amended its original complaint to seek to enjoin the termination of the FA Plan, or in the alternative to seek restoration of the Plan under 29 U.S.C. § 1347. AFA brought this suit pursuant to 29 U.S.C. § 1303(f), which allows the collective bargaining representative of participants adversely affected by agency action to bring suit challenging that action. Such actions are, under relevant case law, reviewed on the agency's administrative record under the arbitrary and capricious standard. Accordingly, PBGC previously provided the AFA with a copy of the complete Administrative Record and filed a copy with the Court. AFA subsequently moved to compel discovery, which PBGC opposed. On August 10, the Court

ordered PBGC to supplement the record with documents relating to the settlement agreement between PBGC and United.

PBGC seeks an order sealing this Supplement to the Record, which primarily includes confidential financial and commercial information used to support detailed analyses by both United and PBGC of proposed settlements between the two parties.

**ARGUMENT**

The Court may, in its discretion, seal documents if the public's right of access is outweighed by competing interests. While there is a strong presumption in favor of public access to judicial proceedings, the law of the D.C. Circuit requires this Court to balance six factors in determining whether to place documents under seal.[1]  This Court stated that these factors are: "1) the need for public access to the documents at issue; 2) the extent to which the public had access to the documents prior to the sealing order; 3) the fact that a party has objected to disclosure and the identity of that party; 4) the strength of the property and privacy interests involved; 5) the possibility of prejudice to those opposing disclosure; and 6) the purposes for which the documents were introduced."[2] All of these factors support sealing the Supplement to the Administrative Record, and each factor shall be addressed in turn.

There is no need for public access to the documents at issue.  The analysis by United and PBGC of settlement proposals between the two parties is not a subject of public interest.  The

---

[1] *EEOC v. National Children's Center, Inc.,* 98 F.3d 1406, 1409 (D.C. Cir. 1996); *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).  Although this standard was first developed in a criminal case, the standard is the same for civil cases. *See Johnson v. Greater Southeast Community Hospital Corporation*, 951 F.2d 1268 (D.C. Cir. 1991).

[2] *Johnson*, 951 F.2d at 1277 n. 14.

public already has access to the only document which matters: the final settlement agreement entered into between United and PBGC.  Furthermore, the information relied on in analyzing the settlement proposals is confidential business material, which, if released, could harm United's ability to effectively negotiate with other parties in the bankruptcy proceeding.  This information is exempt from production under the Freedom of Information Act,[3] and therefore the documents would not otherwise be available to the public.  Finally, as this Court has already held, "the public interest also favors facilitating settlement involving complex issues, where the parties must often broach private matters in order to resolve issues."[4]

Second, none of these materials have previously been made public.[5]  None of the documents have been made public through the ongoing bankruptcy proceeding, and in fact the bankruptcy court has expressly ruled that documents or information regarding the back and forth negotiations are not discoverable in the course of those proceedings.[6]  United and PBGC fully

---

[3] 5 U.S.C. § 552(b)(4).

[4] *AFA v. PBGC*, 05-1036, Memorandum Opinion at 3 (D.D.C. July 26, 2005); *see also In re Vitamins Antitrust Litigation*, 357 F. Supp. 2d 50, 51-52 (D.D.C. 2004) ("[T]he attraction of resolving a case by settlement may be lost if the court allows the contents of settlement negotiations to be disclosed once the negotiations have concluded.").

[5] *See SEC v. Stratton Oakmont, Inc.*, 1996 WL 312194, *2 (D.D.C. 1996) ("the Court cannot justify keeping information under seal that is substantially in the public domain."); *In re PEPCO Employment Litigation*, 1992 WL 115611, *8 (D.D.C. 1992) (recognizing that certain internal company documents, to which the public otherwise had no access, were justifiably sealed).  United has repeatedly kept its financial information out of the public eye through confidentiality agreements, and PBGC has not previously released any of the information in these volumes through a FOIA request or judicial proceeding.

[6] *See* Transcript of court ruling during deposition of Michael Kramer (May 5, 2005) (Attachment XX hereto) at 133-34:

[Judge Wedoff]  I think this [discovery of settlement negotiations] would have an

anticipated that these documents were created and exchanged in accordance with the confidentiality agreement already entered into between the two parties.

Third, although not in a formal manner and not as a party to this case, United has previously requested that materials like those in this Supplement remain under seal as they include settlement negotiations, which, if released, could harm United's competitive position. In fact, because United is not a party to the case, keeping these documents under seal will better protect its interest, which is otherwise not represented.[7]

Fourth, the property and privacy interests involved are very strong. As previously stated, releasing United's financial information could harm its competitive position. In addition, these materials were provided to PBGC and kept confidential in accordance with the confidentiality agreement with United. In the course of fulfilling its statutory function, PBGC, a government agency, has a regular need for confidential business information and thus has a compelling interest in honoring its confidentiality agreements. As this court has previously recognized, there

---

enormously chilling effect on agreements being reached in bankruptcy. I don't think that whatever can be gleaned from that kind of questioning would be commensurate to the burden and the negative impact on bankruptcy administration. I, frankly, don't think that a great deal of useful information would be obtained by engaging in that questioning.

*Accord White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001) ("[a]llowing discovery of negotiations between parties to an ongoing litigation can have a chilling effect on the parties' willingness to enter into agreements"); *Davenport v. Indiana Masonic Home Fdn, Inc.*, 2003 WL 1888986 (S.D. Ind. Mar. 27, 2003), *2 (same).

[7] *See In re Vitamins Antitrust Litigation*, 357 F. Supp. 2d at 51; *McConnell v. Federal Election Commission*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003) ("litigants to [a] proceeding have a lesser claim to privacy than third parties").

is a strong public interest in keeping settlement negotiations confidential so as to encourage the settlement of complex law suits.[8]

Fifth, there would be prejudice to PBGC and United if this confidential information is released. United would be put at an economic disadvantage if its analysis during negotiations was made available to every entity with which it must negotiate future deals. Moreover, as PBGC must continuously negotiate agreements regarding terminated or soon-to-be terminated plans, allowing public disclosure of this information would seriously jeopardize PBGC's ability to successfully negotiate. Plan sponsors would be reluctant to provide any information in the course of negotiations out of fear that the information would become public.

Sixth, the documents are being submitted as part of the administrative record. PBGC has provided the AFA with these sealed records because AFA has also entered into a confidentiality agreement with United. No other method of protecting this information will suffice.

In sum, the reasons for the Court's earlier order sealing Volumes 6-12 of the Administrative Record fully applies to this Supplement to the Record.

---

[8] *In re Vitamins Antitrust Litigation*, 357 F. Supp. 2d at 51.

For the above-stated reasons, PBGC respectfully requests that the Court enter an order substantially in the form attached hereto authorizing the PBGC to file the Confidential Documents under seal and granting such other and further relief as the Court deems appropriate.

Dated: September 26, 2005          Respectfully submitted,

/s/   Andrea M. Wong
JEFFREY B. COHEN, DC Bar #347880
Chief Counsel
CHARLES L. FINKE
Associate Chief Counsel
PAULA CONNELLY, DC Bar #389055
JOHN A. MENKE, DC Bar #370540
Assistant Chief Counsels
SHANNON L. NOVEY, DC Bar #476277
JACQUELYN M. GRAY
ANDREA M. WONG, DC Bar #449128
Attorneys
Pension Benefit Guaranty Corp.
Office of the Chief Counsel
1200 K Street, N.W.
Washington, DC 20005
wong.andrea@pbgc.gov
efile@pbgc.gov
(202) 326-4020, ext. 3448 (telephone)
(202) 326-4112 (facsimile)