# Attachment A

Transmitted by: PBGC NOTICE NO. 01-04                                Part: TR

Date: May 8, 2001                                                    Section: 00-2

SUBJECT:   TERMINATION AND TRUSTEESHIP OF SINGLE-EMPLOYER PENSION PLANS

1. **OVERVIEW**

   This directive sets forth the administrative process of the Pension Benefit Guaranty Corporation (PBGC) for determining whether a covered pension plan should be terminated and trusteed in either a "distress" termination or a PBGC-initiated termination. This directive does not apply to "standard" terminations of fully funded pension plans. *See* Sections 4041 and 4042 of the Employee Retirement Income Security Act of 1974 (ERISA), *as amended.*

   A pension plan that is covered by Title IV of ERISA may terminate under either section 4041 or section 4042 of ERISA, depending on whether the termination is initiated by the plan administrator or by PBGC. The administrator of a pension plan may initiate a "distress" termination by following the procedures under section 4041 of ERISA. PBGC determines whether the contributing sponsor and each member of the contributing sponsor's controlled group meet one or more of the statutory distress criteria.

   PBGC may itself seek plan termination under section 4042 of ERISA whenever one of the criteria in that section is met (*i.e.*, a "discretionary termination"). In addition, under section 4042 PBGC must seek plan termination as soon as practicable when ". . . the plan does not have assets available to pay benefits which are currently due under the terms of the plan" (*i.e.*, a "mandatory termination"). PBGC can initiate termination of a plan if the requirements of section 4042 are satisfied, even if a distress termination application is pending.

   **Part Two** of this directive sets forth definitions; **Part Three** sets forth general procedures for processing both distress and PBGC-initiated termination cases; **Part Four** sets forth procedures for processing distress termination cases; **Part Five** sets forth procedures for processing PBGC-initiated termination cases; **Part Six** sets forth procedures for effecting trusteeship by agreement, and **Part Seven** sets forth procedures for effecting trusteeship by court action.

1

Transmitted by: PBGC NOTICE NO. 01-04                               Part: TR

Date: May 8, 2001                                                    Section: 00-2

2. **DEFINITIONS**

In this directive, the following definitions apply:

a. <u>Aggregate amount of PBGC's claims</u> means PBGC staff's best estimate of the total principal amount of PBGC's claims for unfunded benefit liabilities with respect to the relevant plans.

b. <u>Approving Official</u> means the official with authority to approve a recommendation regarding termination and/or trusteeship of a pension plan. The Approving Official is:

   (1) The Chairperson of the Trusteeship Working Group (TWG), for Exempt cases in which the aggregate amount of PBGC's claims is less than $5 million.

   (2) The Deputy Executive Director and Chief Operating Officer (Chief Operating Officer), for Exempt cases in which the aggregate amount of PBGC's claims is $5 million or more, and for cases in which the aggregate amount of PBGC's claims is $25 million or less and the relevant plans have fewer than 5,000 participants.

   (3) The Chief Negotiator/Director, Corporate Finance and Negotiations Department (Chief Negotiator), for cases in which the aggregate amount of PBGC's claims is more than $25 million, and less than or equal to $100 million, or the relevant plans have 5,000 or more participants.

   (4) The Executive Director, or his designee, for cases in which the aggregate amount of PBGC's claims is more than $100 million, or for any case in which there is a novel or significant policy issue.

c. <u>Executive Summary</u> means a summary memorandum prepared by OGC to accompany the partially executed Trusteeship Decision Record (TDR) when it is routed through the TWG Chairperson (and, if applicable, through any other concurring OED officials) to the Approving Official. OGC will prepare an

2

Transmitted by:  PBGC NOTICE NO. 01-04                                         Part:  TR

Date:  May 8, 2001                                                              Section:  00-2

        Executive Summary regarding each Non-Exempt distress and PBGC-initiated termination case.  No Executive Summary is required for Exempt cases.

    d.    <u>Exempt case</u> means a case that may be reviewed by the TWG Chairperson alone, without requiring a meeting of the full TWG.  The criteria for an Exempt case are set forth in 3.b. below.

    e.    <u>Non-Exempt case</u> means a case that must be reviewed by the full TWG.  If a case does not meet the criteria for a Exempt case, it is a Non-Exempt case.

    f.    <u>Notice of Determination</u> (NOD) means the determination issued by PBGC under section 4042(a) that a plan should or must be terminated.

    g.    <u>Relevant plans</u> means each plan sponsored by a person or any member of such person's controlled group.

    h.    <u>Termination and Trusteeship Decision Record</u> (TDR) is the form used to document the approval of PBGC's determinations:

        (1)    as to whether the distress termination criteria under section 4041 have been met;

        (2)    to seek termination of a plan under section 4042;

        (3)    to seek the appointment of PBGC as trustee; and, usually,

        (4)    as to the recommended plan termination date.

    i.    <u>Trusteeship Agreement</u> (TA) is the written agreement between PBGC and the plan administrator terminating a plan, appointing PBGC trustee of the plan, and establishing the plan termination date.

    j.    <u>Trusteeship Working Group</u> (TWG) is composed of a Chairperson, who is a voting representative from the Office of the Deputy Executive Director and Chief Operating Officer; voting representatives from the Office of the General Counsel

3

Transmitted by: PBGC NOTICE NO. 01-04                                       Part: TR

Date: May 8, 2001                                                           Section: 00-2

(OGC), the Insurance Operations Department (IOD), the Corporate Policy and Research Department (CPRD), and the Corporate Finance and Negotiations Department (CFND); and nonvoting representatives from the Financial Operations Department (FOD) and the Communications and Public Affairs Department (CPAD). The Director, IOD; the General Counsel; the Director, CPRD; the Director, CFND; the Director, FOD; and the Director, CPAD will designate representatives from their respective departments to serve on the TWG.

The TWG or the TWG Chairperson (for Exempt cases) is responsible for reviewing all recommendations:

(1) regarding whether a contributing sponsor and each member of the sponsor's controlled group meet the distress termination criteria;

(2) that PBGC initiate termination proceedings, whether discretionary or mandatory;

(3) regarding the appropriate plan termination dates in distress or PBGC-initiated terminations; and

(4) that PBGC assume trusteeship of a pension plan, whether on a permanent basis under section 4042(c) or an interim basis under section 4042(b).

3. **PROCEDURES FOR PROCESSING DISTRESS AND PBGC-INITIATED TERMINATIONS**

   a. Cases are assigned to the Pre-Termination Division (PPD) within IOD or CFND based upon the amount of the liability and the number of plan participants.

   (1) Unless otherwise agreed upon by the Chief Operating Officer and the Chief Negotiator, PPD/IOD is responsible for cases in which the aggregate amount of PBGC's claims totals $25 million or less and there are fewer than 5,000 participants in the relevant plans, and CFND is responsible for all other cases.

4

Transmitted by: PBGC NOTICE NO. 01-04                                    Part: TR

Date: May 8, 2001                                                         Section: 00-2

      (2)    PPD/IOD or CFND should notify the Director, CPAD prior to the first TWG meeting of all cases in which the aggregate amount of PBGC_s claims is $25 million or more, or there are 5,000 or more participants in the relevant plans.

b.    The department assigned to the case will, with the assistance of OGC, present termination recommendations to the TWG Chairperson. Each termination recommendation is reviewed by the full TWG, unless a case is Exempt from full TWG review. A case is Exempt if:

    (1)    the aggregate amount of PBGC's claims totals $25 million or less;

    (2)    there are fewer than 5,000 participants in the relevant plans;

    (3)    no novel or significant policy issue is involved; and

    (4)    one or more of the following criteria is also met:

        (a)    the plan is recommended for mandatory termination under section 4042(a);

        (b)    the plan is recommended for discretionary termination under section 4042(a)(2) and within the next six months, the plan will not have assets available to pay benefits when due;

        (c)    the plan is recommended for discretionary termination under section 4042(a)(1) or 4042(a)(2), there is no ongoing plan sponsor, and the combined projected annual gross revenues of all known controlled group members are less than 50% of the projected annual minimum funding requirements with respect to the plan; or

        (d)    the plan is recommended for distress termination on the grounds that the plan sponsor and each controlled group member, if any,

5

Transmitted by: PBGC NOTICE NO. 01-04                              Part: TR

Date: May 8, 2001                                                  Section: 00-2

> meet the liquidation test under section 4041(c)(2)(B)(i), the reorganization test under 4041(c)(2)(B)(ii), or are, as of the proposed termination date, not engaged in any business or commercial activity, have no assets or only nominal assets, and have no employees.

The full TWG will, however, review a case that otherwise meets the criteria for an Exempt case upon request of OGC, PPD/IOD, CFND, CPRD, or the TWG Chairperson.

c. Processing Termination Recommendations for Exempt Cases

    (1) Termination recommendations for Exempt cases should include a memorandum supporting the recommendation, a TDR with concurring signatures, appropriate background documentation, and in the case of a PBGC-initiated termination, an NOD to be signed by the Approving Official.

    (2) Concurring signatures required for Exempt cases are:

        (a) IOD - The Auditor/Financial Analyst; the Division Manager and the Director, IOD (or his designee); and

        (b) OGC - The Assistant General Counsel.

    (3) If, after review, the TWG Chairperson requires that substantive changes be made to the recommendation or that additional information be provided before approving or concurring in the termination, PPD/IOD or CFND will revise the TDR, re-circulate it for concurrences, and resubmit it to the TWG Chairperson for approval or concurrence.

    (4) If the aggregate amount of PBGC's claims is less than $5 million, the TWG Chairperson will approve the recommendation by signing the TDR and NOD. If the aggregate amount of PBGC's

Transmitted by: PBGC NOTICE NO. 01-04            Part: TR

---

Date: May 8, 2001            Section: 00-2

---

claims is $5 million or more but less than or equal to $25 million, the TWG Chairperson will concur in the recommendation, then forward it to the Chief Operating Officer for approval.

    d.    Processing Termination Recommendations for Non-Exempt Cases

        (1)    Termination recommendations for Non-Exempt cases should include the memorandum supporting the recommendation, a draft TDR, and appropriate background documents. The TWG Chairperson will schedule a meeting of the TWG.

        (2)    During the meeting, PPD/IOD or CFND will present a termination recommendation concerning the plan to the TWG. The TWG will consider the recommendation, which generally will address (i) whether the plan should terminate and, if so, on what grounds; (ii) a proposed termination date; and (iii) whether PBGC should become trustee of the plan. The TWG will then either concur in the staff recommendation or make its own recommendation. In PBGC-initiated termination cases, the TWG will also address whether one or more of the requirements of section 4042(c) are satisfied. The TWG may render a recommendation on any matter by consensus or by majority vote. The TWG Chairperson will keep minutes of TWG meetings.

        (3)    After the TWG meeting, PPD/IOD or CFND, with OGC's advice and assistance, will prepare the TWG's termination recommendation to the Approving Official. This will include (i) an Executive Summary prepared by OGC; (ii) the final TDR with the concurrences as set forth in (4) below; (iii) for a PBGC-initiated termination case, an NOD to be signed by the Approving Official; (iv) minutes of the TWG meeting (draft minutes may be used if the minutes have not been finalized); and (v) the recommendation package considered by the TWG.

        (4)    Concurring signatures required for Non-Exempt cases are:

7

Transmitted by: PBGC NOTICE NO. 01-04                                    Part: TR

Date: May 8, 2001                                                         Section: 00-2

    (a)    IOD or CFND (whichever department was assigned to the case) - (1) The Auditor/Financial Analyst; (2) the PPD Manager or CFND supervisor; and (3) the Director, IOD (or his designee) or the Deputy Director, CFND;

    (b)    OGC - (1) The Assistant General Counsel; (2) the Deputy General Counsel; and (3) the General Counsel in all distress termination recommendations under criterion 3 (business hardship test) (section 4041(c)(2)(B)(iii)(I)), or criterion 4 (burdensome pension costs test) (section 4041(c)(2)(B)(iii)(II)).

    (c)    OED - The TWG Chairperson.

    (d)    OED - The Chief Operating Officer. The Chief Operating Officer will generally be the Approving Official in PPD/IOD cases, but will concur (rather than approve) in PPD/IOD cases where there is a novel or significant policy issue;

    (e)    The Chief Negotiator. The Chief Negotiator will generally be the Approving Official in CFND cases, but will concur (rather than approve) in CFND cases where there is a novel or significant policy issue or the aggregate amount of PBGC's claims exceeds $100 million.

Once all required concurrences are obtained, the case will be forwarded to the Approving Official.

(5) If the Approving Official agrees with the final termination recommendation, he or she will sign the TDR, and sign the NOD in PBGC-initiated termination cases.

(6) If the TWG does not concur with a staff recommendation regarding termination or trusteeship, the assigned staff may request the Director, IOD (or his designee) and the Deputy Director, CFND to review the case.

8

Transmitted by: PBGC NOTICE NO. 01-04								Part: TR

Date: May 8, 2001											Section: 00-2

       If the Director, IOD (or his designee) and the Deputy Director, CFND concurs with the staff recommendation, they will forward the case to the Executive Director through the Chief Operating Officer and the Chief Negotiator for review and determination.

  e.    The TWG Chairperson will maintain records of all termination decisions and will distribute copies of the decisions to IOD and OGC. For cases approved for trusteeship, the TWG Chairperson will also route a copy of the signed TDR to the Director, CPAD and the Chief, Investment Accounting Branch, COD/FOD.

**4.    ADDITIONAL PROCEDURES APPLICABLE TO DISTRESS TERMINATIONS**

  a.    Termination Recommendations under Section 4042 Where Distress Terminations Have Been Filed

      If an incomplete distress termination filing has been made, the assigned PBGC Department will generally write the filer and give the filer an opportunity to complete the filing. However, nothing will preclude the PBGC Department from recommending that PBGC itself immediately initiate termination proceedings under section 4042 where circumstances warrant. Generally, if a complete distress filing has been made, the TWG will consider the filing before considering a recommendation that PBGC initiate termination proceedings.

  b.    Issuance of Determinations Regarding Distress Terminations

      (1)    Cases Meeting the Distress Criteria

          After a distress termination has been approved, the PPD/IOD Auditor/Financial Analyst or the CFND Financial Analyst will issue a section 4041(c)(2) determination letter stating that PBGC has determined that the contributing sponsor and each member of the sponsor's controlled group has met at least one of the applicable criteria for termination, and a section 4041(c)(3) determination letter stating whether the plan is sufficient for guaranteed benefits. These two determinations may be issued in the same letter. If PBGC is unable to determine that the plan is

9

Transmitted by:  PBGC NOTICE NO. 01-04　　　　　　　　　　　　　　Part:  TR

Date:  May 8, 2001　　　　　　　　　　　　　　　　　　　　　　　Section:  00-2

sufficient for guaranteed benefits, the section 4041(c)(3) determination normally will be issued before, or concurrently with, the mailing of a Trusteeship Agreement to the plan administrator. If the plan has sufficient assets to provide guaranteed benefits and PBGC trusteeship is not recommended, the section 4041(c)(3) determination letter will state that PBGC has determined that the plan is sufficient for guaranteed benefits and instruct the plan administrator to distribute plan assets in accordance with section 4041(b).

Determination letters will be issued to the plan administrator or the plan administrator's duly authorized representative, if one has been designated. Section 4041(c)(2) determinations that grant a request for a distress termination will state that they are final.

(2)　Cases Not Meeting the Distress Criteria

If the request for a distress termination is disapproved, the PPD/IOD Auditor/Financial Analyst or the CFND Financial Analyst will issue a section 4041(c)(2) determination letter stating that PBGC has determined that the applicable requirements for termination have not been met. Section 4041(c)(2) determinations that deny a request for a distress termination normally will state that they are initial determinations subject to reconsideration by the Executive Director (or his designee).

c.　Modification of a Section 4041(c)(2) Determination Letter

If a section 4041(c)(2) determination letter has been issued, but a plan has not yet been terminated, and assigned staff concludes that the determination letter should be modified, the PBGC Department that made the initial termination recommendation will prepare a memorandum recommending modification of the determination letter. The memorandum, along with a modified section 4041(c)(2) determination letter, will be routed to the Approving Official in the same manner and with the same concurrences as for the termination recommendation.

Transmitted by:  PBGC NOTICE NO. 01-04                                Part:  TR

Date:  May 8, 2001                                                    Section:  00-2

5. **ADDITIONAL PROCEDURES APPLICABLE TO PBGC-INITIATED TERMINATIONS**

   a.  Non-Exempt Terminations - Special Circumstances Cases

   Notwithstanding anything in this directive, when time is of the essence and facts and circumstances make it impractical to convene a meeting of the TWG with regard to a Non-Exempt case, the Chief Operating Officer (for PPD/IOD cases) or the Chief Negotiator (for CFND cases) may propose that a plan should be terminated under section 4042 by forwarding his or her recommendation to the Executive Director or the Executive Director's designee, who may approve the recommendation.

   b.  Issuance of Notices of Determination

   The Approving Official will return the signed TDR and NOD to the TWG Chairperson for retention and issuance, respectively. The NOD will be issued to the plan administrator. The NOD will state that PBGC has completed its decision-making process and that its determination is effective on the date of the NOD's issuance. The TWG Chairperson will route copies of the TDR and NOD to OGC, and to the recommending PBGC Department. The TWG Chairperson also will route a copy of the signed TDR to the Chief, Investment Accounting Branch, COD/FOD. IOD will continue the termination and trusteeship process after receipt of a copy of the signed NOD and the TDR, whether the case was initially assigned to PPD/IOD or to CFND.

   c.  Modification or Withdrawal of Notices of Determination

   (1) If an NOD has been issued, but a plan has not yet been terminated, and assigned staff concludes that the NOD should be modified, the PBGC Department that made the initial termination recommendation will prepare a memorandum recommending modification of the NOD. The memorandum, along with a modified NOD, will be routed to the Approving Official in the same manner and with the same concurrences as

11

Transmitted by:  PBGC NOTICE NO. 01-04                                    Part:  TR

Date:  May 8, 2001                                                         Section:  00-2

            for the termination recommendation.

(2)    If an NOD has been issued, but a plan has not yet been terminated, and assigned staff concludes that PBGC should not terminate the plan, the PBGC Department that made the initial termination recommendation will prepare a memorandum recommending withdrawal of the NOD. The memorandum, along with a proposed Notice of Withdrawal of Termination Decision, will be routed to the Approving Official in the same manner and with the same concurrences as for the termination recommendation.

        The Approving Official approves the recommendation by signing and issuing the modified NOD or Notice of Withdrawal. The TWG Chairperson will route a copy of the executed NOD or Notice of Withdrawal to OGC; to the Chief, Investment Accounting Branch, COD/FOD; and to IOD or CFND, as appropriate.

6.    **TRUSTEESHIP BY AGREEMENT**

        The PPD/IOD Auditor/Financial Analyst will prepare the Trusteeship Agreement for all IOD cases, unless informed by OGC that court action will be necessary. OGC will prepare the Trusteeship Agreement for CFND cases.

        Three copies of the unsigned Trusteeship Agreement normally will be sent by the TWG office to the plan administrator or the plan administrator's duly authorized representative with instructions that the three original copies of the agreement are to be signed and returned to the TWG office. Upon receipt of the agreements signed by the plan administrator, the TWG office will forward them to the IOD/Trusteeship Processing Division (TPD) Auditor.

        If the trusteeship agreement has been modified by the plan administrator, the TPD Auditor will request that OGC review the modification(s) and will not execute the modified agreement until and unless OGC concurrence is obtained. If appropriate, the TPD Auditor will sign the agreements on behalf of PBGC, and will then return an original to the plan administrator, forward an original to OGC and retain an original in the case file. The TPD Auditor will route a copy of the agreement to the Chief, Investment

| | |
|---|---|
| Transmitted by: PBGC NOTICE NO. 01-04 | Part: TR |
| Date: May 8, 2001 | Section: 00-2 |

Accounting Branch, COD/FOD and to the Treasury Division.

A case must be referred to OGC if it appears that trusteeship cannot be effected by agreement. *See* Part 7.

7.  **TRUSTEESHIP BY COURT ACTION**

    If PBGC trusteeship is to be effected by court order, OGC will apply to the appropriate United States District Court for a decree adjudicating the plan terminated and appointing PBGC trustee. Upon obtaining a court order, OGC will route a copy of the order to the TWG office; to the Manager of the assigned TPD; to the Chief, Investment Accounting Branch, COD/FOD; and to the Treasury Division.