IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF FLIGHT )<br>    ATTENDANTS – CWA, AFL-CIO, )<br>)<br>                  Plaintiff, )<br>)<br>                    v. )<br>)<br>PENSION BENEFIT GUARANTY )<br>    CORPORATION, )<br>)<br>                  Defendant. )<br>_____) | Civil Action No.: 1:05CV01036<br>                 (ESH)<br><br>Related to Docket # 22 |

**PBGC'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

The Pension Benefit Guaranty Corporation ("PBGC") states the following undisputed material facts:

1. United Air Lines, Inc. ("United") was the plan administrator and contributing sponsor of the United Airlines Flight Attendant Defined Benefit Pension Plan ("FA Plan" or "Plan") within the meaning of 29 U.S.C. §§ 1002(16)(A), 1301(a)(1), and 1301(a)(13). (AR 1683).[1]

2. The Association of Flight Attendants-CWA, AFL-CIO ("AFA") is the bargaining representative of the Flight Attendants employed by United. (AR 166-67).

3. The Plan has approximately 28,600 participants. (AR 128, 3594).

4. On December 9, 2002, United filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (AR 37).

5. After the Air Transportation Stabilization Board made its final decision to deny United's application for a federal loan guarantee in June 2004, United repeatedly stated that it must terminate all of its pension plans in order to successfully emerge from bankruptcy. (AR 69, 628, 984-85, 1356-57).

---

[1] "AR" refers to the administrative record of PBGC's determination to terminate the FA Plan, filed with the Court on July 22, 2005. "AR-S" refers to sealed portions of the administrative record filed with the Court on the same date.

6. On July 23, 2004, United announced it did not expect to make any more statutorily-required minimum funding contributions to its pension plans while in bankruptcy because such payments "would diminish the company's liquidity and reduce flexibility, thus impairing the company's ability to attract exit financing." (AR 1446).

7. On December 14, 2004, United filed a motion under Section 1113 of the Bankruptcy Code, 11 U.S.C. § 1113, to reject its collective bargaining agreements with the Flight Attendants and other unions. (AR 968-1137). One of the provisions in the collective bargaining agreements United sought to eliminate through this motion was any requirement that United maintain defined benefit pension plans. (AR 1055-56).

8. PBGC filed an expert report in United's bankruptcy case in December of 2004, which concluded that at that time United could afford the FA Plan. (AR 822-42). This report was premised on the business plan under which United had been operating and the forecasted fuel curve at that point in time. (AR 827-28, 840).

9. By January 2005, United was able to reach agreements with its unions which resolved the most immediate of its pressing financial concerns in the first quarter of 2005. (AR 1370-71).

10. The issue of termination of the FA Plan was postponed until April 11, 2005. (AR 1370-71). United stated that, in the interim, it would negotiate with its unions over termination, replacement, or other solutions to its pension plans issue. (AR 1371).

11. On April 11, 2005, United re-filed its 1113 motion and filed a motion to terminate its underfunded pension plans in a "distress" termination pursuant to 29 U.S.C. § 1341. (AR 619-718).

12. On May 11, 2005, the bankruptcy court approved a settlement agreement between United and PBGC ("Agreement") regarding many issues, including among other things: PBGC's claims in United's bankruptcy proceeding, liens PBGC had placed on non-debtor subsidiaries, rights to set off, the time and manner of approving replacement plans in the event of the termination of United's pension plans, and a process by which the United pension plans might be terminated. (AR 88-118). Over the objection of the unions and several other creditors, the court found that the Agreement was not in violation of law. (AR 88-91).

13. AFA appealed the approval of the Agreement to the District Court for the Northern District of Illinois, which upheld the decision, and subsequently to the Seventh Circuit Court of Appeals, where the appeal is pending. *Ass'n of Flight Attendants ("AFA") v. United Air Lines, Inc.*, No. 05-C 3172, Memorandum Opinion (N.D. Ill. July 21, 2005), *AFA v. United Air Lines Inc.*, 05-3200 (7th Cir. 2005).

14. On May 18, 2005, PBGC's outside financial experts wrote a detailed report concluding that United could not afford the FA Plan based on the then-current fuel prices. (AR 129-31).

15. On June 16, 2005, PBGC staff forwarded a memorandum and supporting materials to the agency's Trusteeship Working Group ("TWG"), recommending termination of the FA Plan as soon as practicable. (AR 25-33).

16. On June 21, 2005, the TWG met to consider the staff recommendations. (AR 9-24). The TWG voted to concur in the staff recommendation that PBGC terminate and become trustee of the FA Plan, with a termination date as soon as practicable. (AR 23-24).

17. On June 22, 2005, this recommendation, with supporting materials, was transmitted to PBGC's Executive Director for review and deliberation. (AR 5).

18. Information before the Executive Director showed that the unfunded benefit liabilities of the Plan were about $2 billion, of which about $1.7 billion were guaranteed, resulting in a funded ratio of 39.8% for all benefits and 43.3% for guaranteed benefits. (AR 2, 29, 128).

19. By the time staff recommended termination of the Plan, United had missed over $111 million of funding contributions for the FA Plan alone. (AR 31, AR-S 3879-85).

20. In addition, United had revised its position that its pension plans *may* have to be terminated, and had instituted the process to terminate its remaining plans, including the FA Plan. (AR 31, 74-83).

21. PBGC ultimately instituted proceedings to terminate all of United's pension plans involuntarily. (AR 26, 630).

22. PBGC concluded that United would likely succeed in its effort to have the bankruptcy court find that United met the standard for distress termination of its plans under section 1341(c). (AR 30-32, 129-34).

23. PBGC determined that, if the Plan continued until September 2005, the agency would have to absorb nearly $10 million of additional liability. (AR 32). That potential liability would come from three sources.

24. A grow-in due to an early retirement subsidy would add approximately $1.4 million in guaranteed benefits per month the Plan remained ongoing. (AR 32; AR-S 3590).

25. Active participants were continuing to accrue $1.9 million in guaranteed benefits each month the Plan remained ongoing. (AR 32; AR-S 3591).

26. Plan assets would continue to be depleted by an estimated $10,000 per month through United's payment of benefits that are not guaranteed by PBGC. (AR 32; AR-S 3591).

27. On June 23, 2005, PBGC's Executive Director issued a Notice of Determination that the Plan should terminate effective June 30, 2005, and PBGC should become its statutory trustee:

> [T]he Pension Benefit Guaranty Corporation ("PBGC") has determined, under section 4042(a)(2) and (4) of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. § 1342(a)(2) and (4), that the United Airlines Flight Attendant Defined Benefit Pension Plan ("Plan") must be terminated because the Plan will be unable to pay benefits when due because of underfunding, and the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the Plan is not terminated. PBGC further determined, under ERISA § 4042(c), 29 U.S.C. § 1342(c), that the Plan must be terminated in order to avoid any unreasonable deterioration of the financial condition of the Plan and any unreasonable increase in the liability of the fund. Accordingly, PBGC intends to proceed under ERISA § 4042, 29 U.S.C. § 1342, to have the Plan terminated and PBGC appointed as statutory trustee, and under ERISA § 4048, 29 U.S.C. § 1348, to have June 30, 2005, established as the Plan's termination date.

(AR at 1).

**[Remainder of page intentionally left blank.]**

Date: October 7, 2005                Respectfully submitted,

  /s/ Andrea M. Wong
JEFFREY B. COHEN
Chief Counsel
CHARLES L. FINKE
NANCY HEERMANS
Associate Chief Counsels
JOHN A. MENKE
PAULA CONNELLY
Assistant Chief Counsels
SHANNON L. NOVEY
ANDREA M. WONG
DEVA KYLE
Attorneys
PENSION BENEFIT GUARANTY CORP.
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C.  20005-4026
(202) 326-4020, ext. 3848 (telephone)
(202) 326-4112 (facsimile)
Wong.Andrea@pbgc.gov & efile@pbgc.gov